## LADUE *vs.* SEYMOUR & WOOD.

Where, in an action of *assumpsit*, in which the plaintiff relies on the common counts for *work done* and *materials found*, it appears on the trial that there is a *written contract* under which the work was agreed to be done, the plaintiff *must produce the contract* or account for its loss, or he cannot recover under the common counts.

A plaintiff, *on producing the written contract*, may recover under a general *indebitatus assumpsit*, if the agreement has been fully performed by him, and there was nothing special in the contract in relation to the *time* or *manner* of payment; or the credit, if any, has expired. So the plaintiff may recover on an *indebitatus assumpsit* for work done, though there was a *special contract* where the work was actually done, but not within the time or in the manner specified in the contract, if such work was done with the approbation of the defendant.

Where, however, the plaintiff is allowed to sustain his action in the latter case on a *quantum meruit*, the inquiry is not what *under other circumstances* he would be entitled to recover, but what is he entitled to in reference to the *contract price*, and the *damages* sustained by the defendant in consequence of the want of a *strict performance* on the part of the plaintiff.

THIS was an action of *assumpsit*, tried at the Rensselaer circuit, in September, 1838, before the Hon. JOHN P. CUSHMAN, one of the circuit judges.

The declaration contained the common counts in assumpsit, and the plaintiff claimed to recover payment for tanning 500 Georgia hides for the defendants, and proved that the work was worth 5¼ or 5½ cents per pound, and that the hides averaged 14 or 15 pounds each. It appeared, on the plaintiff's evidence, that the work was done under *a sealed contract*, between the parties, and on this ground the defendants moved for a nonsuit ; but the motion was refused, because it appeared *that the work, though not done within the stipulated time, had in fact been done, and there [ *61 ] was evidence of an acceptance of the leather by the defendants.

The defendants offered the written contract in evidence, and offered to prove its execution by *secondary evidence*, the subscribing witness being alleged to be *insane*. The judge holding, however, that there was not sufficient evidence of his insanity, refused to receive the secondary evidence, and the contract was not received. Proof was then given tending to show that the

hides had been injured in the process of tanning. It also appeared that the leather was not returned under about eleven months. On these and other grounds, the defendants claimed a large amount of damages to be deducted from the claim of the plaintiff. The jury found a verdict for the plaintiff, for nearly the whole sum claimed by him.

*B. R. Wood & M. T. Reynolds*, for defendants.

*S. Stevens*, for plaintiff.

*By the Court*, BRONSON, J.    When a man who has done work under a special contract, but not in conformity to it, either as to the time or manner of execution, is allowed to recover against a party who is not in fault, it is the duty of courts and juries to see that an ample allowance is made for all such damages as the defendant has sustained by the departure from the contract. The question is not what the work and materials cost the plaintiff, or how much, *under other circumstances*, he ought to have. He cannot, in any event be entitled to more than the contract price ; and from that must be deducted all that the defendant has lost by the want of a strict performance of the agreement. Any other rule would encourage a lax morality, and punish one man for the fault of another    On this ground, I think the defendants have reason to complain of the verdict.    On the evidence, as it appeared in the absence of the written agreement, the [ *62 ] work was to have been done in five *months ; and if we lay out of view the alleged injury to the hides in the process of tanning, the jury have not allowed so much damages as the defendants must have sustained by the mere delay of six months in performing the contract. But beyond the question of time, I think the evidence nearly conclusive that the plaintiff was in the wrong in relation to the manner of performance. Some of the hides were not sufficiently tanned, and others were water pricked. It is not improbable from the evidence that some of the hides were damaged before the plaintiff took them ; but it is difficult to resist the conclusion that others were injured in the process of tanning. If the jury believed this, it was their duty to allow the defendants full compensation for their damages, although the consequence might be that the plaintiff would get nothing for his labor and materials. In short, the plaintiff should have been made to bear the consequences of his own fault. If the defendants on the whole derived no benefit from what had been done, they were not bound to pay any thing for it.

II. But I do not think it necessary to put the case on the ground that the verdict is against the weight of evidence ; nor to enquire whether the state of mind of the subscribing witness to the contract was such as to authorize the defendant to give secondary evidence of its execution. It was, I think,

the business of the plaintiff to produce the written contract before he could be entitled to recover. I am not aware that this question has even been definitively settled, See *Linningdale* v. *Livingston*, 7 *Johns*. 36. *Clark* v. *Smith*, 14 *Johns*. 326. But upon principle it is extremely clear.

When the special contract has been rescinded or abandoned by the parties, or when an end has been put to it by the wrongful act of the party for whom the services were rendered, the other party may, in general, resort to the *indebitatus assumpsit* counts, and in that form recover for his labor and materials. In such cases, there is no subsisting special contract between the parties. There was one, but it is at an end.

But when there is a subsisting special contract between *the par-    [ *63 ] ties in relation to the thing done, all the cases agree, that the contract must control, and that the remedy is, in general, upon that, and not upon the common counts in assumpsit. 12 *Johns*. *R*. 274. 13 *id*. 94. 14 *id*. 326. 18 *id*. 69. *Id* 451. 16 *Wendell*, 632. The reason of the rule is obvious. The parties are bound by their agreement, and there is no ground for *implying* a promise, where there is *express* contract.

This rule, so far as it relates to the form of the remedy, is subject to two qualifications. If the agreement has been completely performed by the party who was to render the services, and there was nothing special in the contract in relation to the time or manner of payment, or the credit, if any, has expired, there is then a duty upon the other party to pay the stipulated price, for which a general *indebitatus assumpsit* will lie. *Bull*. *N*. *P*. 139. But this only goes to the form of the remedy. · It does not supersede the necessity of producing the special contract. On the contrary, the agreement must be shown, for the purpose of seeing whether it has been performed by the plaintiff, and whether the stipulated time and mode of payment were such as to warrant a recovery without declaring specially on the contract.

The other exception to the general rule which has been mentioned, arises in cases where the plaintiff is entitled to recover, but he cannot sue on the special agreement, for the reason that he cannot aver and prove a full compliance with its terms. *Jewell* v. *Schroeppel*, 4 *Cowen*, 564, will afford a suffifient illustration of a large class of cases on this subject. The plaintiff had completed the mill, and fulfilled the covenant in all respects, except in relation to the time of performance ; and on that point it appeared that the plaintiffs, after the stipulated time had expired, proceeded to the completion of the work with the knowledge and approbation of the defendant. The plaintiffs could not sue on the covenant, because they could not show a strict performance : but the defendant having suffered the work to proceed, and it having ultimately been completed, the plaintiffs were allowed to recover on the common counts, in *assumpsit. In this, as well as in    [ *64 ] the other class of cases, the question only goes to the form of the

remedy.   The special contract is not overlooked and disregarded.   On the contrary, it governs in every thing, with the single exception that the party rendering the services is not wholly precluded from recovering compensation for the want of a strict performance.   It would, indeed, be a most extraordinary doctrine, that one of the parties to a special agreement could set it aside and render it nugatory by his own neglect or misconduct, without any fault of the other party.

Where one man has rendered services for another, upon request, or under circumstances from which a request may be inferred, and there is no proof of a special agreement, the law will imply a promise to pay what the services are reasonably worth.   But the moment it appears that the work was done under a special contract, the implication is at an end.   It is an axiom of law, that where the parties have come to an express contract, none can be implied until that is performed.   *Lawes' Plead. Assump.* 8.   In the case at bar, the plaintiff may have proved enough, in the first instance, to raise an implied promise to pay what the work was reasonably worth.   But when it appeared that the work was done under an express contract, there was no longer any room for such an implied assumpsit.   That ground of action was completely overthrown, and the plaintiff was driven to the necessity of making out a case under the special agreement.   If he could do so, the form of the remedy might still be a *quantum meruit* count in assumpsit ; but the covenant was the foundation of the action, and the plaintiff was, of course, bound to produce it, or account for its absence.

Proof that the plaintiff had not performed in point of time, and that the leather had afterwards been accepted by the defendants, did not obviate the difficulty.   Those facts only tended to show that the action might possibly be maintained—not that the plaintiff was entitled to recover as the case then stood.   It was first necessary to compare his proofs with the terms of the covenant, to see wherein he had performed, and in what he was [ *65 ] deficient.   Beyond this, *the contract would, perhaps, show that the plaintiff had been paid in advance, or that the defendants were to pay in a particular manner, as by the delivery of specific articles, when demanded ; or that they were to have a credit, which had not expired at the time the action was brought.   But if there was nothing special in the contract, either in relation to the time or mode of payment, the question was no longer how much the services were worth, but how much did the defendants agree to pay.   In short, where there is an express contract between parties in relation to any matter, we must know what that contract is, before we can determine that either party is in the wrong, or what is the proper measure of damages ; and the burden of producing and proving the contract must of course rest on him who seeks to enforce it.   True, the plain-

tiff wishes to get away from the contract, and to recover just as though none had ever been made ; but that the law will not permit.

New trial granted.