SAMUEL B. FERGUSON, RESPONDENT, *v.* A. H. RUTHERFORD ET ALS., APPELLANTS.

DENIAL OF RIGHT OF PROPER CROSS-EXAMINATION ERROR.   Where on the trial of an action of assumpsit for work and labor, in which defendant pleaded a general denial and a special contract which had not been complied with, plaintiff testified as a witness on his own behalf to a contract different from that claimed by defendant, and to the performance of the work and labor and its value ; whereupon defendant claimed the right to show, by cross-examination of plaintiff, the existence and terms of the special contract as he claimed it, which was denied on the ground that it was not proper cross-examination : *Held,* error.

PROVINCE OF CROSS-EXAMINATION.   A defendant cannot on cross-examination of plaintiff draw out proof of " new matter"; but he may properly elicit all such particular facts as can tend to disprove the essential or ultimate facts in the plaintiff's case, which the direct examination tended to prove.

" NEW MATTER " IN ACTION ON CONTRACT.   As " new matter " is matter in confession and avoidance, such as cannot be introduced in evidence under an answer simply denying the allegations of the complaint, it follows that in an action on a contract it is not proving new matter for the defendant to show that there are other terms in the contract relied on besides those shown by plaintiff, whether such proof be calculated to defeat the action or only to reduce the damages.

CROSS-EXAMINATION MAY BE THOROUGH, SEARCHING AND EXHAUSTIVE. So far as a party has a right to cross-examine, it is his privilege to make a thorough, searching and exhaustive examination.

RIGHT OF DEFENDANT ON CROSS-EXAMINATION OF PLAINTIFF. Where in an action on contract the plaintiff took the stand and testified to the existence and terms of the contract as claimed by him: *Held,* that the defendant had the right to draw out, on cross-examination and by leading questions, anything which would tend to contradict, weaken or modify the direct testimony of plaintiff, or any inference which might have resulted from it, tending in any degree to support his case.

APPEAL from the District Court of the Seventh Judicial District, Lincoln County.

The defendants in this action were A. H. Rutherford, George W. Rutherford and L. J. Hanchett. The facts are stated in the opinion.

*Hawley & Darrow,* for Appellants.

I. It was error for the court to refuse to allow defendants to cross-examine plaintiff upon the whole contract, the matters pertaining to the crushing and reduction of the ores, and as to all payments made therefor and for freight - money advanced. A cross-examination is about the only test, certainly the most efficacious one, which the law has yet devised to discover the truth. To deprive a party of this right is such irregularity and error as to prevent the party from having a fair and impartial trial, and is sufficient to reverse the case. 1 Greenl. Ev., § 446 ; 10 Mich. 460 ; 14 Cal. 23 ; 29 Ind. 456 ; 37 New York, 143 ; 47 Maine, 470 ; 8 Black, 556 ; 29 Ind. 293 ; 33 Cal. 647 ; 8 Gray, 172.

II. It is true, defendants might have made the plaintiff their own witness and then examined him. But a party ought not to be compelled to make his adversary's witness his own in order to explain a transaction about which the witness has testified in chief, when the object can be accomplished by a regular cross-examination conducted within proper limits. Such a rule if adopted would entirely destroy the object of a cross-examination, and deny to a party the right which the law allows of attacking the credibility of a witness or testing the accuracy of his memory, or disproving his

statements, or of explaining the entire transaction.    See *White* v.
*Deickins*, 19 Geo. 285.    Nor does it cure the error because some
of the matters were partially inquired into afterward, and allowed
without objection.    See also *Cazenove* v.  *Vaughan*, 1 Maule &
Selw. 4 ;  *Kissim* v. *Forrest*, 25 Wend. 651.

III.   It was part of plaintiff's  original case to prove the entire
contract, and it was error to stop half way in chief and allow
plaintiff the privilege of running over the whole track in rebuttal.
1 Greenl. Ev. § 74 ;  *Leland* v.  *Bennett*, 5 Hill, 289 ; *Valentine* v.
*Mahoney*, 37 Cal. 398.

*Ashley, Thornton & Kelly*, for Respondent.

The questions were  properly ruled  out at the  time, since they
were intended by defendants to call out evidence to sustain the
counter claim, and defendants could not introduce their special de-
fence in cross-examination.    Besides, the ruling out of these ques-
tions was immaterial, as the matters inquired about were fully exam-
ined into without objection, as shown by the questions and answers
given.

By the Court, GARBER, J. :

The first count of the complaint in this case, if it states any *cause*
of action, sets forth a general *indebitatus assumpsit* for work and
labor performed for the  defendants in crushing and amalgamating
for them certain quartz ores.  · The answer attempts : first, to deny
each allegation of the complaint ; and second, to set up that the serv-
ices were rendered under a special contract that the ores should be
worked for twenty dollars  per ton, the plaintiff guaranteeing to re-
turn to the defendants, in bullion, seventy-five per cent. of the pulp
assay, and that such return had not been made.

On the trial, before a  jury, the plaintiff testified on his own be-
half  as follows : " Between  September 1st, 1870, and  December
1st, 1870, I crushed, at my mill in Silver Park, for defendants and
at their  request, one hundred  and sixty and  a half tons of ore.
I was to receive for the crushing and amalgamating twenty dollars,
coin, per  ton.    I also paid freight on said ores in  part.    On the

last two lots of ore I paid out for freight $297.76 in coin, which has not been repaid me. This amount was paid at the request of Rutherford and Hanchett."

The defendants then attempted to cross-examine as follows:

Question 1. State whether there was a special contract made between you and the defendants for the crushing and working the ores you have referred to?

Question 2. Will you state whether the agreement to pay you $20 per ton was the whole contract made between you and defendants with regard to crushing the ores, or whether it was only part of the contract?

Question 3. Did you not, at the time defendants agreed to pay you $20 per ton for crushing said ores, agree with them, as. part of the same contract, that you would guarantee to return to them 75 per cent. of the value of the pulp assay of all said ores?

Question 4. Did you say you were to have $20 for crushing? Ans. Yes.

Question 5. Was that all the agreement? Ans. It was not.

Question 6. Was that the whole contract in regard to the crushing? Ans. I was to crush "No. 7" ore at 75 per cent. of the pulp assay in bullion. The contract was made with A. H. Rutherford, and was not to extend to the "M. F." or "No. 9" ore.

Question 7. Will you state the entire contract between you and Rutherford, in regard to the crushing of the ore for which this action was brought? State the whole contract, and when it was made, and by whom? Ans. I met A. H. Rutherford at Wheeler's store; he asked what per cent. I would work "No. 7" ore; I told him I would work 5 or 10 tons as a test at 75 per cent; I received no ore from him under this talk, and made no bargain. About August. 20th, I met him in Hamilton; he was not satisfied about the return of some ore he had worked there; I told him I could work his "No. 7" ore to 75 per cent. if it worked as well as the ore I had worked for Church. "No. 9" and "M. F." ore were not in the agreement; the amount still due me from defendants is $861.53 for crushing, and $297.75 paid for hauling.

Question 8. Have you received to your own use, or retained out

of the bullion produced by you from said ores, any of said bullion? If so, state the amount.

Question 9. Have you ever received any money from the defendants for crushing the rock referred to? If so, when and how much?

Question 10. If you crushed in all 160 tons of ore, at $20 per ton, how is it that you only claim the sum of $861.53 for said crushing? Why do you not claim the whole $3,200?

The questions numbered 1, 2, 3, 8, 9 and 10, were objected to by the plaintiff, on the ground that they were introductory of the defendant's case. The objection was sustained and the questions were not allowed to be answered, to which ruling the defendants excepted. The defendants then requested permission to examine the witness generally as to the existence and terms of said special contract, and to show thereby that, according to its terms, the plaintiff, if he complied therewith, had in his hands more than enough of said bullion to pay him the contract price, and that all the ores referred to in the complaint were included in the agreement; and that the plaintiff had kept all the accounts relating to the ores and bullion and assays. This was refused, and to the refusal the defendants excepted. There was no reëxamination, and the testimony of this witness constituted the plaintiff's case in chief, and thereupon he rested.

The defendants then introduced testimony in support of the case they had offered to make out by cross-examination, and the plaintiff, in rebuttal, introduced testimony tending to sustain his theory that only a portion of the ore was embraced within or worked under the said contract; and, further, that so much thereof as bound him to a return of the 75 per cent. had been waived by mutual consent before the work was done. The verdict was in favor of the plaintiff for the sum claimed, $1,159 53.

The appellants assign for error the denial of the privilege of cross-examination as above set forth. The respondent contends: first, that the rulings were correct, for the reason specified in his objection; and second, that they were immaterial, because the matters inquired about were fully examined into without objection, as shown by the answers above copied.

As to the first proposition, the result is the same, whether we

apply to the facts of this case the English or the American rule. By the former, the defendants had the right to cross-examine the witness upon all matters material to the issue. See 2 Gray, (Mass.) 264; 24 Wis. 70. By the latter, they could not, on cross-examination, draw out proof of "new matter"; but might elicit all such particular facts as might tend to disprove the essential or ultimate facts in the plaintiff's case, which the direct examination tended to prove. 14 Cal. 24.

The plaintiff's case as he made it—that which the direct examination tended to establish—was, that a special contract between him and the defendants had been fully executed according to its terms, and that nothing remained to be done but the payment of the agreed price. 2 Wallace, 9; 14 Grattan, 453; 1 W. & Serg. 304; 2 Vroom, 336; 28 Ill. 378. The resultant facts which the proposed cross-examination tended to establish, went in direct denial of this case of the plaintiff. "New matter" is matter in confession and avoidance. Gould's Pl. Ch. 3, Sec. 195. It cannot be introduced under an answer simply denying the allegations of the complaint. But these facts did not constitute new matter. They qualify the contract relied on by the plaintiff, and introduce a new condition into it. A special plea, embodying such facts, is bad on special demurrer, as amounting to the general issue. *Nash* v. *Breeze*, 11 Mees. & W. 352; *Jones* v. *Nanney*, 1 Ib. 333. This is conclusive that they are not matters in confession and avoidance; for, even after the relaxation of practice which allowed many special defenses to be proved under the general issue, all facts confessing the truth of the declaration *might* be specially pleaded. Gould, Ch. 6, Sec. 56. Since the new rules in England, requiring all matters in confession and avoidance to be specially pleaded in every species of assumpsit, such a defense as that here set up is admissible under the general issue. Consequently, under our statute a denial of the allegations of the complaint is sufficient to let it in. See *Cousins* v. *Paddon*, C. M. & R. (Exch.) 556; *Pegg* v. *Stead*, 38 E. C. L. Rep. 373; 31 Ib. 562; *Moffett* v. *Sackett*, 18 N. Y. 527; 14 Cal. 414.

In order to recover the contract price, the burden was on the plaintiff to prove the contract and his performance of it. If, in-

stead of this, he had proved a fulfillment in good faith, but not in the manner prescribed, and the sanction and acceptance of the defendants, still the burden of producing and proving the contract would have rested on him.  *Laduc* v. *Seymour*, 24 Wendell, 64, and cases *supra*.    It follows that it is not proving new matter, for the defendants to show that there are other terms in the contract from which the plaintiff has deviated, either to defeat the action, or to reduce the damages, accordingly as the case of the plaintiff is shaped.    Thus far, the defendants can go under their denials. Tho fact that circumstances called forth by legitimate cross-examination happen also to sustain a cross-action or counter claim, affords no reason why they should be excluded.    8 M. & W. 858.

In answer to the second proposition of counsel, but little need be said.    So far as they had the right to cross-examine at all, it was the privilege of the defendants to make a thorough, searching and exhaustive examination.    Admitting that it may be so needlessly and impertinently protracted as to justify the interposition of the court, this is a thing of rare occurrence; and, except in extreme cases, counsel should not be controlled or hampered in the exercise of a duty so delicate and important.

The facts here do not excuse the interference of the court, nor do they justify what was practically an absolute denial of the right. That right was, to draw out on cross-examination and by *leading* questions anything which would tend to contradict, weaken or modify the evidence the plaintiff had given on his direct examination, or any inference which might have resulted from it, tending in any degree to support his case—for instance, to show that his conduct had been at variance with his testimony or its tendency.    13 Gray, 283 ; 14 Mich. 184.    Under this rule, some of the questions were obviously pertinent.    The plaintiff might have so answered as to show that he claimed an amount inconsistent with his theory that he did not make the guarantee to the extent asserted by the defendants, and that to the extent that he did guarantee, this condition of the contract was waived.    Until the questions asked were answered, neither the court nor the counsel could well determine the necessity or propriety of following them up with other questions ; and, to have proffered others, in defiance of the distinct

ruling of the court that no cross-examination as to the terms of agreement was proper, would have been unseemly and indecorous. The judgment and order appealed from are reversed.