# JUNE TERM, 1882.

## WHEELING.

### HAIGH v. UNITED STATES BUILDING, LAND AND LOAN ASSOCIATION.

Submitted June 7, 1880.   Decided July 1, 1882.

1. An article in the constitution of a building association provided : "Any member wishing to have his deed of trust released shall repay the full amount of money covered by his deed of trust, &c.; but in all cases he shall receive credit on his note for dues paid on his stock to the association." The notes taken by the association were not for the money actually loaned but for the par value of the stock; and it could demand interest not on the face value of these notes but only on the money actually loaned ; and the principal of the note was not intended to be paid but both it and the premium was at the close of the association to be offset against the par value of the shares, which would then be due to the redeeming member.   HELD :

    This article of the constitution was intended to permit a redeeming member to pay up his loan in advance and obtain a release of his deed of trust and to provide, that where this was done, the settlement should be so made, that neither the association nor the borrower should sustain pecuniary loss, but each party should be left in the same pecuniary condition, that he would have been in, had the member not paid his loan in advance but continued a member of the association to its close ; and to effect this purpose of this article the details of the settlement so awkwardly expressed must be to some extent departed from ; but a mode of settlement should be adopted corresponding as closely, as may be, to the mode indicated in the article consistently with its general purpose. This would be effected by requiring the withdrawing member to pay the present value of all moneys, which he would be required to pay in the future, were he to continue to be a member of the association ; and this present value should be found by discounting the future payments of both dues and interest to the estimated close of the association at the rate of six per centum per annum for the average time of such future payments. *Haigh* v. *United States Building, Land and Loan Association,*   (p. 802).

2. A party, who has voluntarily paid money with a full knowledge of all the facts and circumstances but under a mistake as to the law, cannot recover it back ; and therefore a member of such building association, who has voluntarily paid more money to obtain a release of his deed of trust, than under its constitution the building association could have required, cannot recover it back, if he knew all the facts, when he made the payment, but was mistaken as to his legal rights.   (p. 810)

3. A member of a building association, who complies with its constitution and by-laws and under their provisions withdraws, can recover the amount due him under such constitution and by-laws by an action of *assumpsit*, in which there is no special count but only the common counts. (p. 801).

4. If in such a suit the case is submitted by consent to the court in lieu of a jury, who renders a judgment for the plaintiff, and in a bill of exceptions taken by the defendant all the facts proven are certified by the court, and it appears, that they were all admissible under the common counts in the declaration and justify the judgment of the court, this court will not reverse such a judgment, because the circuit court overruled improperly a demurrer to a defective special count, as the defendant could not possibly be prejudiced in such a case by such error.   (p 801).

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Ohio, rendered on the 1st day of November, 1879, in a case in said court then pending, wherein John J. Haigh was plaintiff and the United States Building, Land and Loan Association was defendant, allowed upon the petition of said defendant.

Hon. Thayer Melvin, judge of the first judicial circuit, rendered the judgment complained of.

GREEN, JUDGE, furnishes the following statement of the case :

This was an action of *assumpsit* brought by John J. Haigh against The United States Building Land and Loan Association in the circuit court of Ohio county, to recover $409.25, claimed to be due to him on his withdrawing as a member of the association according to the provisions of the constitution of said association.   At the trial of the case it was proven, that the facts, on which this suit was instituted, were as follows :   The defendant was a corporation organized under the laws of the State of West Virginia as a building association, having its principal office of business in the city of Wheeling.   On the 27th of October, 1877, the plaintiff became a member and stockholder of said corporation subscribing to ten shares of its stock, and on November 22, 1874, he subscribed for five additional shares.   On the 5th day of December the plaintiff redeemed of these shares five, on December 25, 1874, three shares, on July 28, 1875, one share, and on October 19, 1875, three shares, in all twelve shares.   He

received on the redemption of these twelve shares in all $1,116.00, and executed his notes for $1,800.00 in all, the par value of these twelve shares at $150.00 for each share. These notes were drawn payable seven years after their respective dates, all of them being dated back to December 1, 1874, with interest payable quarterly in advance ; and on the face of the notes he pledged his shares so redeemed as security. These notes though given at these several dates, when these shares were redeemed, are all dated December 1, 1874. And on the 30th day of December, 1874, the plaintiff gave a deed of trust on certain real estate " in trust to secure to the defendant the prompt and full payment of $2,250.00, as evidenced by certain promissory notes made and executed by said John J. Haigh, dated December 1, 1874, amounting in all to the sum of $2,250.00, payable seven years after date to the defendant for value received, with interest from date payable quarterly in advance ; and further to secure to the defendant the prompt and full payment when due of each instalment of interest on each of said notes, the prompt and full payment of all dues, fines and other charges, which said John J. Haigh may be assessed as a member of said association, and the repayment of any and all sums, which the said association may have to pay for taxes, insurance or other charges on said property."

This deed, though dated December 30, 1874, was actually executed and recorded December 5, 1874, and when it was executed, only three shares had been redeemed, and only one note given of $450.00. The notes secured are said in the deed of trust to amount in the aggregate to $2,250.00, which was the par value of the fifteen shares owned by the plaintiff; and the deed of trust was thus intended to secure not only the note given for the redemption of the three shares, which had been redeemed, when it was given, but for the prospective redemption of all the shares; and when other shares were afterwards redeemed, the notes were all dated back to December 1, 1874, and were so written as to correspond with the general descriptions of the notes, which had been inserted in this deed of trust. The plaintiff paid up regularly and promptly his entrance-fee and all dues and interest on the notes, which he had executed, up to November 7, 1876.

On the 20th day of October, 1876, the plaintiff called on the secretary of the defendant and stated his desire to retire from the association entirely and enquired how much he owed. He was told by the secretary, that his debt amounted to about $1,240.00; and that the association would not relieve him then, unless he paid it. The plaintiff left and after a time returned and told the secretary, that he thought this sum was too much. The secretary then again made a calculation and stated, that the amount to be paid by the plaintiff was $1,118.00 and gave him a statement of his calculation.

Section 1 of article X of the constitution of the association provided: "Every member shall pay an entrance fee of 25 cents on each share and shall pay on every Tuesday 25 cents on each share held by him having the right however to pay his dues in advance." And section 1 of article XIV provided: "Any member may withdraw from this association any or all of the unredeemed shares held by him, upon written notice thereof to the directory, who shall within one month thereafter repay to such member the weekly dues per share received of him to the date of his withdrawal, and the withdrawing shareholder shall receive simple interest, at the rate of six per cent. per annum on the average amount paid." The 7th section of article 14 and the article 21 provided: "Any member redeeming any of his shares and giving his stock as security for the same, if he should become at any time unable to pay his dues and interest and wish to withdraw from the association, he shall notify the directory of the same, whose duty it shall be to have said member paid all moneys due him with interest as per section 1, article 14, first deducting all fines and his portion of the expense incurred by the association."

The statement made out by the secretary, on which the plaintiff and defendant settled, when the plaintiff withdrew from the association, charged the plaintiff on the twelve redeemed shares with dues for the estimated time, during which the association would continue, assumed to be seven years from its commencement, December 1, 1874, that is, 256 weeks, four years ten months from the time of the settlement. These estimated future dues on these twelve shares was $768. He was also charged with interest on the par value

of these twelve shares, that is, on $1,800.00, that being the full amount of his notes. This interest on these notes for this future time, four years and ten months, amounted to $522.00. If this interest had been charged, as under the decisions of this court recently made it clearly should have been, only on the amount actually loaned, $1,116.00, if we assume that this was the proper basis of settlement at all, it would have amounted to only $323.64, a difference against the plaintiff in this interest-charge of nearly $200.00. But this interest on the par value of the notes being taken for four years and ten months in advance, it was obvious upon this basis of statement, that some allowance should be made the plaintiff in the nature of discount for payment in advance. The true amount of this discount if it had been calculated properly at the rate of 6 per cent. per annum would have been $187.55, but in this settlement the plaintiff was made an allowance because of this payment in advance of only $90.00 which was less by nearly $100.00 than the true discount. This was not an error of calculation; but the secretary in making this allowance did not profess to allow the discount at 6 per cent. per annum but fixed on this sum of $90.00 arbitrarily as the amount, which the association should allow because of this payment in advance.

In settling with withdrawing members he allowed usually such discount, as he thought just, and was not governed by any fixed rule, the association being of opinion, that neither their constitution nor the law laid down any fixed rule on this subject. This mode of stating the account left due on the twelve redeemed shares and the notes secured by the deed of trust $1,200.00; and from this was then subtracted the value, which the association would have to pay on the three unredeemed shares. This value was calculated correctly in accordance with the 14th article of the constitution of the association and amounted to $82.00. This being deducted from the $1,200.00, the amount estimated by the secretary as due on the twelve redeemed shares and the loans based on them and on the three unredeemed shares, left a net balance due from the plaintiff of $1,118.00. The plaintiff paid this $1,118.00 in cash; and his notes were surrendered; and the deed of trust, which he had given, was released by the de-

fendant.   This statement made out by the secretary of the
defendant, on which this settlement was made, was explained
to the plaintiff; and he understood it at the time; but then
the calculations showed, that on his redeemed shares and
loans he owed $1,290,00, and when an abatement of the $90.00
was made because of the payments being made in advance,
the secretary did not tell the plaintiff, that this was an arbi-
trary deduction made on no regular basis or per centage.
The plaintiff made no enquiry of the manner, in which the
secretary arrived at this deduction of $90.00 ; and in the state-
ment given to the plaintiff it was merely set down as "interest
allowed."

The secretary on the trial of the case admits, that this re-
bate of interest was about $100.00 less than a rebate
at the rate of six per cent. per annum on the sums to be paid
in the future would have amounted to.   But he justified this
allowance, because as understood by the officers there was no
method laid down in the defendant's constitution, by which
an allowance should be made for money paid in advance.
And he stated, that he was not liberal in making such allow-
ances, where parties applied to be let out, as he calls it, for
he knew the association ran a risk in letting members out of
the association, and he thought the association would run
more than seven years, though he had no other basis on
which to make his calculations.   After this suit was brought,
the association adopted a different and definite plan, by which
members might withdraw; and under it the plaintiff could
not have withdrawn on as favorable terms to him as he did.

The evidence shows, that the plaintiff understood perfectly
the statement made by the secretary and the settlement, under
which he actually withdrew.   Indeed he had in his pos-
session the constitution of the association from the time,
when he became a member, and on blank leaves attached
to it had entered as credits all payments he had made
to the association on his dues.   His interest had all been paid
up to the date of the settlement and somewhat in advance and
in the settlement no back interest had been charged.   He had
improperly paid interest on the par value of his shares re-
deemed, the par value of his notes, instead as he ought to have
done only on the amount actually loaned him.   When this

settlement was made a notice of the plaintiff's intention to withdraw his three unredeemed shares was drawn and signed by the plaintiff and addressed to the secretary; and on the back of it was drawn a receipt of the amount of the withdrawal of them, $82.00, which was signed by the plaintiff as received by him.    He gave no other notice of withdrawal.    The receipt and notice were dated October 24, 1876.    The plaintiff not only did not protest against the manner, in which the settlement was made, but made at the time no complaint about it; but after it was made, and the $1,118.00 was paid by him and his notes surrendered, his counsel did complain of it; but neither he nor the plaintiff ever offered to cancel the arrangement, which had been made, and put the plaintiff back in the association as a member.

The declaration, that was filed, and each count thereof were demurred to; and the demurrers were overruled by the court. The first count set out the facts hereinbefore stated, except that it did not state anything about this settlement or of the facts, that occurred at the time, when it was made, and omitted to state, that twelve of the fifteen shares had been redeemed, but on the contrary alleged, that the whole fifteen shares were unredeemed.    It says: "The said plaintiff, his fifteen shares being then unredeemed, by and with the consent of the defendant withdrew his said fifteen shares of stock from the said defendant, and he the said plaintiff afterwards to-wit, on the 8th day of December, A. D., 1876, at the county aforesaid, more than a month having elapsed from the time of said withdrawal, demanded of the said defendant, that it should repay to him the said weekly dues for shares heretofore received from him, the said plaintiff as aforesaid, with simple interest at the rate of 6 per cent. per annum on the average amount paid in by the plaintiff as aforesaid after the first year; but the said defendant did not, when it was so requested as aforesaid nor at any other time, pay the said plaintiff the said dues nor the said interest nor any part of either, by means of all of which premises it became liable to pay to the plaintiff the sum of $490.25, and being so liable it undertook and promised to pay the same, yet it has refused so to do."

The second count in this declaration is like the first, ex-

cept that it sets out the redemption of twelve of the fifteen shares of the plaintiff, and that he notified the defendant's board of directors of his intention to withdraw the twelve redeemed shares, and also that he notified them in writing of his intention to withdraw the three unredeemed shares. The count then proceeds thus:   "And said plaintiff says, that afterwards, to wit, on the 7th day of November, A. D. 1876, he, the said plaintiff, by and with the consent of the said defendant repaid to the said defendant all the money theretofore borrowed by him as aforesaid and paid the accrued interest thereon ; and then and there with like consent withdrew his said fifteen shares of stock from the said defendant," and it then proceeds as in the first count to allege a demand of a repayment of the back dues paid and interest and the refusal of the defendant to pay the same and concludes as in the first count.

The third count is an *indebitatus* count for money had and recovered in the usual form ; and the fourth count is an *indebitatus* count in the usual form as an account stated.

With this declaration was filed a bill of particulars specifying in detail all the dues, which had been paid by the plaintiff to the defendant, which summed up $396.25, to which was added "interest averaged as per constitution up to November 7, 1876, on dues, $13.00," making a total of $409.25.   Before setting out these dues, which, the bill of particulars states, are sought to be recovered, this bill of particulars has this account :

" THE UNITED STATES BUILDING ASSOCIATION

To JOHN J. HAIGH Dr.

1870, October 24.—To amount overcharged on withdrawal and paid under protest................................. .... ..................... ........... $326  25"

The defendant demurred to this declaration, and each count thereof and being overruled by the court the defendant pleaded *non assumpsit* and payment, and filed therewith a specification of payments, which consisted of the settlement hereinbefore stated, showing a balance due from the plaintiff of $1,118.00, which amount, it states, was received of him in settlement. The defendant also filed a plea of set-off which stated this settlement in detail and states, that " the said plaintiff then and there accepted and received said four promissory notes

and release of deed of trust and release and exoneration from further payments to the defendant and said credit of $82.00 of and from the said defendant in full satisfaction and discharge of his said several promises and undertakings."

To these pleas the plaintiff replied generally ; and issues were joined. By consent the case was decided by the court in lieu of a jury, who on November 1, 1879, entered this judgment :

" This day came the parties by their attorneys, and the matters in dispute having been submitted to the court in lieu of a jury, and the court having heard the evidence and arguments of counsel finds for the plaintiff and assesses his damages at $97.55 principal and $17.75 interest. Therefore it is considered by the court, that the plaintiff recover of the defendant one hundred and fifteen dollars and thirty cents ($115.30) aggregate of damages and interest to date with interest thereon from the 1st day of November, 1879, until paid and his costs by him about his suit against the said defendant in this behalf expended.

" Memo. Upon the trial of this cause the defendant excepted to certain rulings of the court and to the judgment therein and filed its several bills of exceptions, which are signed and sealed by the court and made a part of the record herein."

The first of the two bills of exceptions referred to is to the refusal of the court to exclude all the evidence of the plaintiff, on the ground that the same varied materially from the declaration. It sets forth the plaintiff's evidence, substantially as has been hereinbefore stated and also an admission, that the acts of the secretary of the defendant were binding on it. The second bill of exceptions was to the final judgment of the court ; and in it all the facts proven as hereinbefore stated are set out at length.

A writ of error to this judgment was awarded the defendant by this Court.

*Mr. Lamb* appeared for plaintiffs in error and *Mr. Hubbard* for defendants in error and cited the same authorities as in the case of *Parker and others* v. *The U. S. Build. L. & L. Association.*

GREEN, JUDGE, announced the opinion of the Court :

The counsel of the plaintiff in error insists, that the court should have sustained the demurrer to the first and second counts of the declaration; to the first count, because it failed to allege, that the plaintiff had given written notice to the defendant's directory, as required by the constitution of the defendant, of his intention to withdraw his shares ; and to the second count, because it is based on section 7 of article 14 of the defendant's constitution and yet failed to show, that it was applicable to the plaintiff, as it did not allege, that he had given his stock as security, to which species of redemption only this section applies. But perhaps these objections might be met by the fact, that each of these counts alleges, that the plaintiffs' shares had been withdrawn with the defendant's consent, which consent was a waiver of the notice ; and even if the redeemed shares named in the second count could not have been as of right withdrawn by the plaintiff under the defendant's constitution, yet if it consented thereto, such withdrawal would have conferred on the plaintiff the same rights, as if his redeemed shares had been secured by his stock.   We need not however decide, whether these two counts are good and sufficient, as upon the proof in the case, all the' facts being before us, and the case being submitted to the court in lieu of a jury, there can be no question, unless the defendant made out its defence of accord and satisfaction, that the plaintiff would have had a right to recover on the common counts in the declaration.

If under such circumstances we should think, that the two first special counts were defectively drawn, and that the court below ought to have sustained the demurrer to them, yet this error could not possibly have prejudiced the defendant, and to justify this court in reversing a judgment the error of the court below must be prejudicial to the plaintiff in error.   When the record shows affirmatively, as in this case, that the supposed error of the court below in refusing to sustain a demurrer to some counts in a declaration could not possibly have been prejudicial to the plaintiff in error, such supposed error furnishes no ground for a reversal in this Court. See *Merchants' and Mechanics' Bank* v. *Evans and Dorsey*, 9 W. Va. 373; *Hale* v. *The West Virginia Oil and Oil Land*

*Co.,* 11 W. Va. 236; *The First National Bank of Wellsburg* v. *Kimberlands,* 16 W. Va. 595.

There can be no question, but that on the facts proven on the trial and properly proven under the common money-counts and bill of particulars filed with them the plaintiff would have had a right to· recover, if the evidence does not sustain the defence set up by the defendant, though there had been no special count in his declaration. It is well settled, that though there has been a special agreement, yet if it has been rescinded by mutual consent, or in any other manner put altogether out of the case, the plaintiff need not declare on such special agreement but may recover on the common counts *indebitatus assumpsit.* See *Planche* v. *Colburn et als.,* 8 Bing. 14 (21 E. C. L. 203); *Phillips* v. *Wiggington,* 1 Ad. & E. 33 (28 Eng. C. L.) 100; *Keyes* v. *Stone,* 5 Mass. 391; *Perkins* v. *Hart,* 11 Wheat. 251; *Ladue* v. *Seymour,* 24 Wend. 62; *Londregon* v. *Corwley,* 12 Conn. 558; *Johnson's ex'r* v. *Jennings's adm'r,* 10 Gratt. 4.

There was no necessity in this case to have any special counts in the declaration. The common counts were altogether sufficient. Nor was there any necessity to file a special plea of accord and satisfaction, as this defense could have been made under the general pleas of *non-assumpsit* and payment accompanied as these were in this case with a specification of payments. See *First National Bank of Wellsburg* v. *Kimberlands,* 16 W. Va. 555.

Upon the merits of the case the plaintiff had clearly under the constitution of the defendant a right to withdraw all his shares both the redeemed and the unredeemed. Under the 1st section of article XIV of defendant's constitution a member had an unquestionable right to withdraw his unredeemed shares on certain terms clearly specified; and the 7th section of article XIV authorizes expressly any member, who has redeemed his shares and given his shares of stock as security, to withdraw these shares apparently on the same terms substantially as a member, who had not redeemed his shares. The plaintiff in this case had actually given his twelve shares of stock, which he had redeemed, as security for the money, which he had borrowed, and thus under the 7th section of article XIV he had a right to withdraw these shares. It is

true he had given a deed of trust on real property to secure these loans on the redemption of these shares; but he had also given his stock as security for these loans. Each note, which he executed, on its face pledged his stock as security for these loans; and the deed of trust was given only as a further security. The 7th section of article XIV authorizes the withdrawal of such redeemed shares and apparently on substantially the same terms as the unredeemed shares.

If we were to assume, as probably we might reasonably do, that this seventh section of article XIV contemplated, that what was rightfully due from the redeeming member on his loans should on his withdrawal be paid up, though not then due, it would on such withdrawal be necessary to determine, what *ex equo et bono* was due. It would seem obvious, if the redeeming member had a right to withdraw and settle his loans then with the association, that in the absence of any express provision as to the terms of such settlement the association could not demand the payment in full of the money loaned with the interest thereon till the close of the association; for though the member had promised to pay this, yet his promise was to pay much of this at future periods extending over years; and the present value of these future payments is all, that *ex equo et bono* he could be required to pay. Now, as he had paid up all the past interest, it is evident, that, excluding for the present the consideration of the premium, these loans would be satisfied by the payment back of the exact amount borrowed, that is, in the present case, by the repayment of the $1,116.00 borrowed; and upon this payment being made the member would be entitled to have refunded to him all the dues, which he had paid on the fifteen shares. The amount of dues, which had been paid, when the plaintiff withdrew, was $396.25. He would also be entitled to reasonable interest on such dues. That by section 1 of article XIV of the defendant's constitution was fixed " at simple interest at the rate of six per centum per annum for the average time on the amount paid in after the first year." This interest would be about $23.85; and as the plaintiff had paid usurious interest theretofore on his loans, having paid interest on the par value of his shares instead of on the money actually loaned, he would be entitled to have this usurious

interest so improperly paid credited to him in such settlement. This would amount to about $78.89. These, the counsel for the defendant in error claims, are the only legitimate items, which should have entered into such settlement. If this be so, the accounts at the time, when the plaintiff withdrew, stood as follows :

JOHN J. HAIGH,

*To* THE U. S. BUILDING ASSOCIATION, *Dr.*

| | |
|---|---:|
| To the amt. of the principal sum borrowed on redemption of twelve shares | $1,118 00 |

*Cr.*

| | |
|---|---:|
| By amt. of dues, which had been paid on fifteen shares | $   396 25 |
| Interest on same accrued as per constitution | 23 85 |
| Amount of usurious interest theretofore paid | 78 84 |
| | $   498 94 |
| Balance due | $   619 06 |

But this would obviously be a mode of settlement unjust to the building association. The member withdrawing had agreed to pay for the preference in obtaining these loans amounting to $1,116.00 a premium to be paid at the close of the association of $684.00. By this mode of settlement insisted on by the counsel of defendant in error it is obvious, that the plaintiff on withdrawing would repudiate the payment of any portion of this premium, which he had agreed to pay, and which the association had a right to receive. Though he thus agreed to pay this legitimate premium for the loans, he now claims, that he had a right to withdraw and could be required to pay only the money borrowed and legal interest. Of course, if he had this right, every member would have it ; and most of them would exercise it, just before the association closed ; and thus no premiums would ever be received by the association. It would be obviously unjust thus to deprive the association of all premiums, when the statute had expressly conferred on it a right to receive such premiums. The most the defendant in error could claim is, that he should have been required to pay only such portion of the premium, $684.00, as would be a fair apportionment of it for the time he had the use of the $1,116.00 borrowed. This premium was payable at the close of the association an average period of sixty-five months, after the money was borrowed. If it

had been payable at times distributed through the whole period of the continuance of the association, as monthly, of course this term would have been shorter.   What should have been paid when thus distributed is found by discounting this $684.00 for half of this sixty-five months or for thirty-two and one half months at the rate of six per cent. per annum. When thus discounted this $684.00 is reduced to $612.76, as the sum agreed to be paid as a premium for the loan of $1,116.00 for sixty-five months, when the payments were made monthly, that is, $9.43 per month or $179.17 for nineteen months, to which should be added the interest for the one half of the nineteen months, as it was not settled till the close of the nineteen months, that is, interest for nine and one half months. which is $8.51, making in all $187.68.   This added to the $618.06 due as above-stated, when the payment of any portion of the premium was excluded, would make the plaintiff in debt to the association $805.74, or $312.26 less than the amount he actually paid.

This, it seems to me, would be the legitimate mode of settlement, had there been no provision in the defendant's constitution except those contained in the 14th article; but there is another article in this constitution not referred to in the plaintiff's declaration, which appears to have been inserted for the express purpose of determining the manner, in which a settlement should be made, when a redeeming member withdrew and desired to have his deed of trust released.   It is the 21st article, which provides : " Any member wishing to have his deed of trust released shall repay the full amount of money covered by his deed of trust, &c., but in all cases he shall receive credit on his note for the dues paid on his stock to the association."   This is very awkwardly expressed.   Its purpose was apparently, when a member desired to withdraw from the association and obtain a release of his indebtedness to the association arising from his having borrowed money from it, to allow him to do so, and to provide, that the settlement of what should be paid by the borrower should be so made, that both parties should be left pecuniarly in the same situation, that they would have been in, had he continued a member to the close of the association.   This purpose is confusedly expressed by declaring, that he is to be charged with

the full amount of money, he would thereafter have to pay the association, or in the language of this article, "with the full amount of money covered by his deed of trust," and be credited on the note, which he had given for the money borrowed, by the dues, which he had already paid to the association; the interest, which he had paid, not being mentioned, it being considered as offset by his having had the use of the money loaned. The draughtsman of this article obviously had no clear conception of what was " the full amount of money to be covered by the deed of trust," and by the concluding sentence of this section 1 of this article seems to have thought, that a note was to be given by the member borrowing money, which note was to be paid off just as any other person would pay his note for money borrowed of an individual. The constitution had made no special provision as to how this note given for money borrowed was to be met, or for what amount taken ; but the draughtsman of this article seems to have assumed, that such payments would be made on it as interest, as would compensate the association for the use of the money loaned.

Now, as the business of this association was actually conducted, it would be impossible to effect the purpose of this article, to permit a settlement of this loan in advance without pecuniary loss to either party by an attempt to follow in detail the mode of settlement named in this article. The association did not take a note of the borrower for the amount of money actually loaned and require this note to be paid, as an individual borrowing money of another would pay it ; and yet the drauhgtsman of this article has expressed his general purpose, that neither party should suffer pecuniary loss in the settlement, by using language, which would have been appropriate, had it been a loan by one individual to another, and a note had been given for the money borrowed, and this note secured by a deed of trust. But the form of the transaction, as actually used by the parties, is very different ; and the language used in this article is inappropriate to express the idea, which was intended to be expressed, that neither party was to suffer pecuniary loss by the settlement of the loan in advance ; and if the details of this settlement as spoken of in this article were literally carried out, the obvious purpose of the article would be defeated.

The truth is, that no note was given by the redeeming member for the money borrowed, though the draughtsman of this article seems to have assumed, that such note would be given and secured by the deed of trust.   Instead of giving a a note for the money borrowed the redeeming member gave his note for the par value of his shares redeemed; and when it fell due at the close of the association, the principal of the note given would amount to the sum borrowed and the premium bid added together.   Nor was it contemplated in this transaction, that this note should actually be paid; and this Court has decided, that the full amount of it could not be required of the borrower; that while the principal of it was to be paid as well as his premium bid by the member giving up his shares at the close of the association worth par, yet the interest on this note would not be exacted but only the interest on the money actually loaned.   For these reasons we cannot literally carry out the 21st article by following its details in the settlement to be made when a redeeming member desired to take up this note and have his deed of trust released.   The language used is inappropriate as a mode of settling such a transaction as actually existed, it being language which was proper to express the idea intended to be conveyed, had the transaction assumed the usual form of the borrower giving a note for the amount actually borrowed and paying it off in the usual mode.   Still the general purpose intended to be affected by this 21st article can be carried out and ought to be carried out in the manner pointed out but so modified as may be necessary to effect the purposes of the article ; and in so doing some of the details named must be disregarded.

We have in effect decided in the case of *Pfeister* v. *Wheeling Building Association et al. supra*, that the " full amount of money covered by the deed of trust," &c., is the amount of money actually borrowed and received by the member with legal interest thereon payable quarterly in advance and the premium bid for the preference in taking the loans.   The principal of this loan and the premium being payable at the close of the association, when there would be due from the association to the member the par value of these shares, wherewith to pay off this principal due from him and this premium also, provided he paid up promptly his interest and dues to

808 HAIGH v. U. S. B. L. & L. ASSOCIATION. [Sup. Ct.

the close of the association; and as a mode of paying the full amount of money so covered by the deed of trust it might provide for the payment promptly of this interest and these dues up to the close of the association. But by "the repaying the full amount of the money covered by the deed of trust," &c., could not be meant, that there was to be paid more than the present value of this premium and principal-money loaned or the equivalent of it, the present value of the dues and interest to be paid by the withdrawing member from the time of his withdrawal to the time, when it was estimated the association would close. This construction is not only just and reasonable, but it is sustained by the decisions in the case of *Robinson* v. *Homestead Association*, 10 Md. 397, and *Building Association* v. *Eastman*, 31 Md. 556.

To meet his obligations the plaintiff in this case would have had to pay his dues from the time, when he withdrew, to the close of the association, estimated to be four years and ten months. His dues on his twelve redeemed shares were $3.00 per week, and for the two hundred and fifty-six weeks would amount to $768.00; and the interest, which he would have had to pay, had he paid interest on the par value of his shares, as he had been doing, would have amounted to $522.00; but instead of paying interest on $1,800.00 the par value of his shares, he should have paid interest only on the money actually loaned him. *Pfeister* v. *Wheeling Building Association et al., supra.* The true amount of interest, which he ought to have paid after the time, when he withdrew, would have been $336.00. So that the "full amount of money covered by the deed of trust," &c., was $1,104.00 to be paid at intervals extending over four years and ten months or, averaging the time, two years and five months after the date of the withdrawal. Discounting this $1,104.00 for this two years and five months at the rate of 6 per cent. per annum its present value would be $964.25, the true amount, which should have been paid by the plaintiff to procure the release of his deed of trust, the amount due on the withdrawal of the three unredeemed shares, the amount of dues paid in the preceding one hundred and eight weeks was $81.00, and interest after the first year about $5.00 total $86.00), which deducted from $964.25 would leave as due from the plaintiff $878.25, from which again

should have been abated the $78.84 of usurious interest, which had been previously paid by the plaintiff, leaving a net balance due from him of about $800.00, that is, $318.00 less than the amount actually paid.

This result corresponds very closely with the amount, which was reached by the calculation we made based on what would have been the rights of the parties, where a member withdrew and paid off his indebtedness, had the constitution of the association made no special provision about this mode of settlement. And this correspondence might reasonably have been anticipated; for independent of this 21st article of this constitution, if a member had a right to withdraw, the law would have said, that in exercising this right neither he nor the association should be pecuniarily injured, and that both parties should be left pecuniarily in the same situation, as though the member had not withdrawn. As we interpret this 21st article, the draughtsman intended to carry out what we conceive, would have been at any rate the rights of the parties. And in the last statement we have endeavored to give to both parties their respective rights so understood, adopting the mode, so far as could be done, indicated by this 21st article. In the first statement we have endeavored to give to each party the same rights but by a mode, which was the most natural in the absence of any special provision in the constitution, but which adopted in the calculation an estimate of interest and past dues paid as also the dues themselves, which had been paid on the redeemed shares, which was not necessary to consider in the mode of settlement indicated in the 21st article of the constitution. That the results of these two modes of calculation should be substantially the same might therefore be expected.

The errors in the calculations of the secretary of the defendant consisted first in charging interest on the par value of the shares, $1,800.00, instead of on the amount actually loaned, $1,116.00. This he had no right to do. See *Pfeister* v. *Wheeling Building Association et al., supra.* He again erred in making the arbitrary abatement of $90.00 instead of making a discount for payment in advance at the rate of six per cent. per annum. This discount at this rate was proper as shown by the Maryland cases, which we have cited. He

further erred in not crediting the usurious interest $78.84, which had been before that time taken.

It remains to determine, whether this $318.00 can be properly recovered in this suit on the actual facts proven in this case. It is well settled by numerous decisions, that money paid under a mistake of law cannot be recovered back. If it be paid in ignorance of facts, it may be recovered back. To permit money to be recovered back, which has been paid by a party with a full and perfect knowledge of all the facts, simply because he was mistaken in his opinion as to his legal rights, would be to introduce into the law a new and most dangerous principle. In the case of *Mayor, &c. of Richmond* v. *Judah,* 5 Leigh 305 the authorities on this subject are fully reviewed ; and they establish beyond controversy the above proposition. Among these authorities are *Bilbie* v. *Lumley,* 2 East 469 ; *Lundie* v. *Robertson,* 7 East 231 and 12 East 38 ; *Brisbane* v. *Dacres,* 5 Taunt. 144 (1 Eng. C. L. 43) ; *Milnes* v. *Duncan,* 6 B. & C. 671 (13 Eng. C. L. 293) ; *Brown* v. *McKinley,* 4 Esp. 279 ; *Martin* v. *Morgan,* 1 B. & B. 289, (5 Eng. C. L. 87) ; *Child* v. *Morley,* 8 T. R. 610 ; *Lyon* v. *Richmond,* 2 Johns. Chy. 60. These and other cases cited in this case are but a very few of the very large number of cases, which have been decided based on these principles. The rule is firmly established, that when a party voluntarily pays money in ignorance of law, though he could clearly not have been compelled to pay the money, still he never can recover it back in the absence of duress or fraud practiced on him. Judge Carr in the case of *Mayor, &c. of Richmond* v. *Judah,* 5 Leigh 311 thus states this proposition : "Can a party who has voluntarily paid money with a full knowledge of all the facts and circumstances but under a mistake as to the law recover it back by an action for money had and received to his use? I hold, that he cannot ; and if a multitude of adjudged cases settle a point I think there are fewer better settled in law."

This, as I understand the case now before us, is the exact question involved in this record. Upon it the counsel of the defendant in error refers to but two authorities *Ashmole* v. *Wainwright,* 2 Ad. & E. 873 (42 Eng. C. L.

R. 938) and *Wakefield* v. *Newbon*, 6 Ad. & E. 277 (51 Eng. C. L. R. 275.)   These cases are not at all in conflict with the law as stated above.   They simply hold, that if a party having the custody of my goods refuses to deliver them to me, unless I will pay to him money, which I do not owe, and in order to get possession of my goods I pay the money thus wrongfully demanded under protest, I may in an action of *assumpsit* recover back money thus wrongfully extorted from me.   But these decisions are expressly based on the ground, that the payments so made were not voluntarily made.   Lord Dernen, C. J., in the last case says :   " The evil of allowing extortion by means of a wrongful detention of goods is great ; the wrong-doer has no right to complain, that he is compelled to restore money, which he was warned he had no right to extort.   The case is wholly different from that class, where the parties have come to a voluntary settlement of their concerns, and have chosen to pay what is found due."

In the case before us the payment of the $1,116.00 by the plaintiff to the defendant on October 24, 1876, on his withdrawal from the association was, as shown by the evidence in this case, a perfectly voluntary payment made with a perfect knowledge on his part of all the facts and circumstances of the case but under a misconception as to the terms, on which under the constitution of the building association he had a right to withdraw.   He had in his possession the constitution of this association and had had possession of it for nearly two years taking in the blank leaves bound up with it every week receipts for his dues paid.   He had several days before told the secretary of the defendant, that he intended withdrawing, and was then told, that if he withdrew, he would have to pay under this constitution on his withdrawal $1,240.00.   When he came back after several days and complained, that this sum was too much, the calculation was made over and the demand was reduced to $1,116.00, with which he appeared satisfied and paid it in cash and had his notes surrendered and his deed of trust released.

It is true, that he was not at the time, when this settlement was made, told by the secretary of the building association, that the discount of $90.00 made because of his payment of the money borrowed in advance of the time, when it was due,

was an arbitrary abatement made by no rule, but such an abatement, as in the judgment of the secretary was reasonable; but he must have known, that this abatement of the $90.00 was an arbitrary abatement. The statement was furnished to him, and he could not but see at a glance, that it was not a discount at six per centum per annum interest on the moneys to be paid in the future. Such a discount would have amounted to more than twice $90.00. The statement on its face showed, that the calculation was not based on such a discount at the rate of six per centum per annum, but did show, that it was an arbitrary abatement. Opposite this $90.00 on the paper given him were simply the words, " interest allowed." The total amount due as calculated on the plaintiff's loans was $1,290.00 and from this was knocked off this $90.00, obviously on no rule of calculation but arbitrarily, so as to reduce the amount to the even sum of $1,200.00. The plaintiff made no enquiry as to how this abatement of $90.00 was ascertained; and he made no enquiry, because, as I conceive, he clearly understood at the time, that it was an arbitrary sum, such as the secretary thought reasonable; and the strong probability is, that he knew, that the secretary was in the habit, when a member withdrew, of making such arbitrary abatement, as he thought right. The plaintiff says, that " the secretary explained the statement to him and he understood it then."

The circuit court gave the plaintiff a judgment for the difference between this $90.00 and the true discount at six per cent. per annum. But the plaintiff misconceiving his legal rights, when he knew all the facts and circumstances, permitted this settlement to be made in this manner, and concluded it by paying the $1,116.00 and having his notes surrendered, and could on the principles, which we have stated, never recover back any of the moneys so paid. He had just as much right to have other errors as to the rights of the parties corrected as the particular one, which was corrected by the court. It was a voluntary settlement made with perfect knowledge of all the facts; and the voluntary payment made by reason of this settlement cannot be recovered back, though it now appears, that the plaintiff had a right to withdraw on the payment of some $300.00 more or less than the sum, which he thus actually and voluntarily paid.

The counsel for the defendant in error seems to have taken a very different view of what was proven in the case and accordingly seems to suppose, that the principles of law, which we have laid down, are inapplicable to the case. He says in his brief: "Not content with having exacted and received from the plaintiff excessive and usurious interest for two years, while he was a member, the association actually compelled him to pay the like usurious interest for the five additional years of its duration;" and again he says: "Under the pressure of a refusal to release his deed of trust the plaintiff paid the $1,118.00"; and he speaks of this settlement "as an exaction perfectly arbitrary and equally unjust." There is nothing in the evidence to justify these conclusions.

It is true, that the association had received from the plaintiff as from all its other redeeming members usurious interest for two years prior to this settlement; but it is equally true, that this is an immaterial matter in this case, as the declararation made no complaint thereof, and this suit was not in any manner based upon this receipt by the association of usurious interest. But, that the "association actually compelled the plaintiff to pay the like usurious interest for the five years the association would last after this settlement" is entirely without foundation. When this settlement was made the plaintiff was no needy borrower prepared to pay any exactions of usurious interest, which might be demanded. On the contrary he seems to have had an abundance of money, for which he had no present use, and sought to pay off a debt at once, a part of which was not due, for nearly five years. So little use had he for this surplus, that he was willing to pay off this debt, though his creditor would only discount it at a rate of less than 3 per cent. per annum. In effect he was willing for the use of this money ($1,118.00) for this long time to take the very small sum of $90.00. And having agreed to do so he now seeks to compel his creditor to pay him 6 per cent. per annum interest on this money, and seems to regard as usurious on the part of his creditor the acceptance of this money by him at 3 per cent. per annum interest.

It is true, that the creditor was unwilling to receive the money and allow more than three per centum per annum interest; and it is further true, that he had a right to compel his

creditor to allow a larger rate of interest and to accept the money; but he chose to waive this right. He did so probably in ignorance of his legal right to require his creditor to accept it and allow a larger rate of interest; but this ignorance on his part obviously did not render his action less voluntary. His creditor did not by threats or otherwise force him to make this arrangement. Indeed the creditor had no means of thus forcing him. He was perfectly able to meet his obligations and was in a situation, in which he could well have defied his creditor. It is difficult to conceive how money can be voluntarily paid, if the payment of this $1,118.00 was to be regarded as involuntary. There was less even of inducement to make the payment than exists in nearly all cases and no element of compulsion.

In the case of *Mayor, &c., of Richmond* v. *Judah*, 5 Leigh 305, the payment was of city-taxes, which the city had a right to enforce summarily by sale, and yet the payment was held to be voluntary; and therefore, though the taxes claimed were unjust, the amount paid could not be recovered back. Here the building association had not even the power of sale under the deed of trust, unless the plaintiff made default in the payment of small amounts of fines and dues—amounts he was perfectly able to pay, as he had cash enough to pay them off for five years in advance. The principles we have laid down were applied in a transaction between a building association and a member in *Miller* v. *Second Jefferson Building Association*, 50 Pa. St. 32.

We are for these reasons clearly of the opinion, that the circuit court erred in its judgment in favor of the plaintiff, rendered November 1st, 1879; and this judgment must be reversed, and the plaintiff in error must recover its costs in this Court; and this Court entering up such judgment as the circuit court should have entered, must dismiss the plaintiff's case and give a judgment for the defendant for its costs in the circuit court.

JUDGES JOHNSON AND HAYMOND CONCURRED.

JUDGMENT REVERSED.    CAUSE DISMISSED.