## JACKSON vs· JONES.

An agreement to deliver a certain specified quantity of produce, at a future day, provided such quantity should then remain, after the necessary supplies of the covenantor, is executory and conditional; and if the whole quantity stipulated for, should not remain, the contract is determined—such agreement imports an entire contract incapable of apportionment, to be fulfilled in the whole, or not at all.

While a special contract subsists, none can be implied; and for the breach of a special contract the remedy is on the contract, and not in general indebitatus assumpsit.

But where the agreement has been wholly performed by one party, and nothing remains to be done, but payment by the other, a general indebitatus assumpsit will lie for the sum due.

If the plaintiff is entitled to recover, but cannot sue on the special contract for the reason that he cannot aver and prove a full compliance with its terms, he may recover on the common counts in assumpsit.

In either of these cases the special contract must be produced, in order to establish the plaintiff's right to the form of remedy adopted.

### Appeal from Monroe Circuit Court.

Hon. GEORGE W. BEAZLEY, Circuit Judge.

WATKINS & GALLAGHER, and PALMER, for the appellant.

A contract must be construed according to the plain and apparent sense thereof. *Greenlf. Ev.* sec. 278 *et seq.*

There being a subsisting contract at the time, suit must have been brought thereon. 24 *Wend.* 262; 2 *Pick.* 275; 9 *Ala.* 108.

Defendant's two last instructions were clearly the law. 5 *Shep.* 372; 4 *Iredell* 247.

The defendant was clearly entitled to the corn, under the contract, at forty cents. 4 *B. & C.* 941; 2 *B.* 389; *Salk.* 113; 7 *East.* 558.

FOWLER & STILLWELL, for appellee.

If the whole amount of corn contracted for, did not remain after Jones had supplied himself, he was not bound to deliver,

nor was Jackson bound to receive a less quantity.  3 *Wend.* 112; 4 *Cush.* 33; 17 *Mass.* 605; 1 *Pick.* 406.

The special contract being at an end, Jackson, by using the corn, became liable for its market value.

Mr. Justice COMPTON delivered the opinion of the Court.

The parties to the action in this case, made their contract in writing, which is as follows:

"Agreement between John T. Jones and Henry G. Jackson, " *witnesseth;* that said Jackson agrees to take of said Jones " fifteen hundred bushels of corn, at forty cents per bushel, and " ten thousand pounds of fodder at seventy-five cents per hun- " dred, which the said Jones agrees to deliver to the said Jack- " son on his farm, provided the same shall be made and " gathered on the said farm after supplying what may be needed " by the said Jones during the year 1854.  The delivery to be " made and the money to be paid on the first day of January, " 1855.  Witness our hands this 20th January, 1854.

JOHN T. JONES,<br>H. G. JACKSON."

The corn being in cribs on the plantation which Jones had sold to Jackson, Jackson's agent, on the 1st January, 1855, went upon the premises—being the time and place fixed by the contract—and was ready to receive the corn and pay for it. Jones, however, was not present and did not deliver the corn, having told the agent a short time before then, that he would not deliver it.  On the 9th January, 1855, Jackson took possession of the premises, and finding the corn then unmeasured in the cribs, and learning that Jones had refused to deliver it, commenced using and consumed 1,179 bushels of the corn without his consent.  Jones also used a portion of the corn after the 1st January, 1855; but how much he consumed, or how much was in the cribs on the 1st January, 1855, does not distinctly appear.

Under these circumstances Jones sued Jackson upon an implied assumpsit, the declaration containing none other than

the common counts for goods sold and delivered; and the case being tried before a jury on the plea of non-assumpsit, Jones recovered judgment for the market value of the corn consumed by Jackson, which was seventy-five cents per bushel.

At the trial several instructions were given the jury, at the request of the plaintiff and against the objection of the defendant, all which may be reduced to two propositions:

1st. That if, after the plaintiff had supplied himself for the year 1854, there was not remaining on the 1st January, 1855, as much as fifteen hundred bushels of the corn which had been raised and gathered on the plaintiff's farm, the plaintiff was not bound, under the contract, to deliver a less quantity, and if the defendant appropriated the corn to his own use without the consent of the plaintiff, he was liable for the value of the corn, at the time it was so appropriated, notwithstanding the special contract; and 2nd:  If the plaintiff refused to deliver the corn, the remedy of the defendant was a suit for breach of the special contract, but he had no right to take the corn and appropriate it to his own use, and if he did so, he was liable to the plaintiff for the value of the corn at the time it was so taken and appropriated notwithstanding such special contract.

In the first of these propositions there is no error.  The contract was to sell corn at a future time, and the sale was dependent upon a contingency.  The contract was, therefore, not only executory, but was also conditional.  If, on the 1st January, 1855, there were not fifteen hundred bushels of corn, grown and gathered on the farm of the plaintiff, after supplying himself for the year 1854, then the contract was at an end, and ceased to be obligatory upon either party.  This construction is well sustained by the authorities both English and American.  *Boyd vs. Siffkin*, 2 *Camp.* 326; *Johnson vs. McDonald*, 9 *Mees. & Wel.* 601 *marg.*; *Russell vs. Nicoll*, 3 *Wend.* 112; *Shields vs. Pettee*, 2 *Sandf.* 262.

The contract was also entire; it was for the sale of a specified quantity of corn, expressed in language plain and unambiguous. The purchaser not being bound to receive, the seller was not

bound to deliver less than the whole quantity, upon the principle that the obligation was reciprocal. In *Russell vs. Nicoll*, 3 *Wend.* 112 *supra*, the contract was for the sale of five hundred bales of cotton, to be delivered on arrival at New York from New Orleans, at any time between the 9th of February, and the 1st day of June thereafter. Only eleven bales arrived within the specified time, and the defendants refused to deliver them because the whole five hundred bales were not received. The court in that case said: "The contract was for five hun-
" dred bales; it was entire; there was no obligation on the part
" of the plaintiffs to receive a less quantity than the whole, and
" consequently none on the part of the defendants to deliver
" less than the whole. The obligation to deliver and receive
" must be reciprocal."

So in *Batre vs. Simpson*, 4 *Ala.* 305, the contract was for the purchase of ninety bales of cotton, part at one price and part at another; the cotton was destroyed by fire before it was all weighed, and the court held that the contract was entire; that the vendor was not entitled to recover the price of any part of it, and that the willingness of the purchaser to have taken less or more than the vendor agreed to sell him, could not change the character of the contract. See also *Niblett vs. Herring*, 4 *Jones'* (*N. C.*) *Law Rep.* 262.

There is error in the second proposition. Although the title to the corn did not pass, because the contract was executory, and its fulfilment dependent upon a contingency, and although the taking of the corn by the defendant was a tortious act for which he was liable in damages to the full value of the corn, at the time of its conversion, had the plaintiff chosen to proceed against him in trespass or trover; still, the plaintiff could not waive the wrongful act of the defendant, and recover, upon an implied assumpsit, the market price of the corn, while the special contract between the parties was subsisting. It was at his option to treat the defendant as a wrong doer, or as a purchaser. If he chose to treat him as having purchased the corn, he was bound to resort to the special contract as containing the terms

of the purchase, and this upon the obviously just principle, that the law never accommodates a party with an implied contract when he has made a specific one as to the same subject matter. In *Ferguson vs. Carrington*, 17 *Eng. Com. Law R.* 36, the vendors had sold their goods upon credit, the purchaser fraudulently intending at the time of the contract not to pay for them. In assumpsit by the vendors for goods sold and delivered brought before the expiration of the credit, it was held that the action was not maintainable, though the vendors might have treated the contract as a nullity, and have brought trover immediately to recover the value of the goods. In this case it was said, per BAILEY, J., " The plaintiffs have affirmed the contract by bringing this action. The contract proved was a sale on credit, and where there is an express contract the law will not imply one;" and per PARKE, J.: "As long as the contract existed, the plaintiffs were bound to sue on that contract. They might have treated the contract as void on the ground of fraud, and brought trover. By bringing this action they affirm the contract made between them and the defendant." And in *Cutler vs. Powell*, 6 *T. R.* 324, it was remarked by LORD CH. J., KENYON: " That where the parties have come to an express contract none can be implied, has prevailed so long as to be reduced to an axiom in the law." Indeed upon principle and by authority, it is the settled law, that where there is a special contract, the law implies none, and so long as the special contract is subsisting between the parties, it must control, and the remedy is, in general, upon that, and not upon the common counts in assumpsit. *Touissant vs. Martinnant*, 2 *T. R.* 104; *Selway vs. Fogg*, 5 *Mees. & Wels.* 83; *Grimman vs. Legge*, 15 *Eng. Com. L. R.* 164; *Whiting vs. Sullivan*, 7 *Mass.* 107; *Galloway vs. Holmes*, 1 *Doug. (Mich.) R.* 330; *Lodue vs. Seymour*, 24 *Wend.* 59.

This rule, however, so far as it relates to the form of the remedy, must be understood as subject to certain qualifications. Thus: if the agreement has been completely performed by the one party, and there is nothing special in the contract in relation to the time or manner of the payment, or the credit, if any,

has expired, there is then a duty upon the other party to pay the stipulated price, for which a general indebitatus assumpsit will lie. *Bull. N. P.* 139. Or, if the plaintiff is entitled to recover, but cannot sue on the special contract, for the reason that he cannot aver and prove a full compliance with its terms, he will be permitted to recover on the common counts, in assumpsit, as in *Jewell vs. Schroeppel,* 4 *Cowen* 564. But this only goes to the form of the remedy. It does not dispense with the necessity of producing the special contract. That must be produced, in order that it may appear whether it has been performed by the plaintiff, and whether the stipulated time and mode of payment would warrant a recovery without declaring specially on the contract; or, whether it contained those terms, the performance of which the plaintiff, though entitled to recover, could not aver and prove. In all such cases, the contract is not disregarded; it still governs. The plaintiff may sue upon the common counts, but he must make out his case under the special contract. *Lodue vs. Seymour,* 24 *Wendell* 59, *supra.*

Whether the special contract in the case we are considering, was at an end, or still subsisted at the time the defendant appropriated the plaintiff's corn, depended, as we have seen, upon the quantity of corn remaining on the 1st January, 1855, after the plaintiff had supplied himself for the year 1854. As to this fact, the testimony in the record is conflicting, but inasmuch as the case must go back for a new trial, we do not deem it proper to comment upon the evidence. It was important, however, that the jury should have passed upon this question of fact, and yet the charge of the court, as indicated in the second proposition above discussed, was such as to enable them to find a verdict against the defendant, as they did do, for the market price of the corn, without doing so. If there were fifteen hundred bushels of corn remaining on the 1st January, 1855, then the special contract was subsisting, and the plaintiff was not entitled to recover more than forty cents per bushel, that being the stipulated price; but if not, then the contract was

ended, and the plaintiff was entitled to recover the market value of the corn.

Let the judgment be reversed and the cause remanded for further proceedings.