STUART *v.* BEAM.

4-8920 224 S. W. 2d 7

Opinion delivered November 14, 1949.

*Bates, Poe & Bates,* for appellant.

*J. F. Quillin, O. R. Smith* and *E. K. Edwards,* for appellee.

HOLT, J. July 28, 1941, Jackson Stuart died intestate, leaving as his sole heirs, ten living children and children of a deceased son, Lester Stuart. Appellant, Luther Stuart, was one of the sons of Jackson Stuart and the appellees constitute the remainder of the heirs. At his death, Jackson Stuart left a 316 acre farm, and the present suit was instituted by appellees to partition this acreage.

Appellant, in a separate answer, alleged that in 1923, following his mother's death, his father, Jackson Stuart, orally contracted with him that if he, appellant, would move into his father's home, on the land in question, and care for him during the remainder of his life, as consideration, he would give to Luther Stuart the 316 acre farm, the gift of conveyance to become effective upon the death of Jackson Stuart. He further alleged that he had performed his part of said contract and asked for specific performance. Appellant filed answer and cross-complaint to which appellees replied denying appellant's claim. Upon a hearing, there was a decree

in favor of appellees and directing partition as prayed. This appeal followed.

The primary and decisive question is one of fact.

In 1923, appellant, one of the sons of Jackson Stuart, with his family, seven in all, moved into the home of his father, on the land in question, where they lived during his father's lifetime. They had been living in a "two-room, boxed house." His father's house was larger, more comfortable, was two stories, and contained five rooms. When Jackson Stuart's wife died in 1923, he was in need of some one in the home.

It appears to be conceded that appellant took good care of his father, and in fact, appellees commend him for the attention and care which he and his family bestowed. What appellees do earnestly insist, however, is that Jackson Stuart never entered into any agreement such as appellant contends here.

The evidence is voluminous. We do not attempt to set it out in detail, for to do so would serve no useful purpose.

In brief, appellant testified that the oral agreement was entered into between him and his father in 1923. There were no witnesses to this agreement. His wife and daughters testified, in effect, that they did not know of this alleged 1923 contract, but that some time in 1938, Jackson Stuart told them he wanted them to have the home when he died. There was some evidence tending to corroborate this testimony. Appellant found the farm well equipped with work animals, milk cows, chickens, and farm equipment. Most of the food for appellant and his family was produced on the farm. His father was a fairly successful farmer, was not without financial means, and paid for a substantial part of the food and groceries not supplied by the farm. During the period from 1923 to 1941, while appellant lived with his father, he accumulated more than 250 acres of land and dealt in livestock to his profit.

Appellees appear to have known nothing of appellant's claim of ownership of the farm until his answer was filed in the present suit.

We now point out briefly specific acts of appellant following his father's death that strongly tend to contradict his testimony as to the alleged oral agreement.

February 18, 1943, appellant filed his verified claim "for services rendered in keeping and caring for Jackson Stuart, deceased, during his lifetime—$3,000." There was evidence that appellant tried to buy the interest of appellees in the land subsequent to his father's death. On another occasion, following his father's death, appellant, in a conversation with his brother, Morgan Stuart, in Fort Smith, offered to purchase the farm for $2,500. Appellant testified: "Q. You fixed a value of $2,500 on it once? A. No. I never told any of them that I would give $2,500 for the place, I just asked them what they would take."

In order to prevail, it devolved upon appellant to prove by clear, cogent, satisfactory and convincing evidence, the execution of a valid oral contract with Jackson Stuart, his father. This rule has been many times announced by this court.

We said in the recent case of *Crowell* v. *Parks*, 209 Ark. 803, 193 S. W. 2d 483: "It has long been the rule of this court that a valid oral contract to make a will or a deed to land may be made, but that the testimony to establish such a contract must be clear, cogent, satisfactory and convincing. One of the latest cases so holding is *Jensen* v. *Housley, Admr.*, 207 Ark. 742, 182 S. W. 2d 758, where a number of our former cases are cited. Among the cases so cited is *Kranz* v. *Kranz*, 203 Ark. 1147, 158 S. W. 2d 926, in which we said, 'it is not sufficient that he establish it (the oral contract) by a preponderance of the testimony, but that he must go further and establish the contract by evidence so clear, satisfactory and convincing as to be substantially beyond a reasonable doubt.'"

Appellant agrees that the rule above announced is correct, but insists that the testimony adduced by him measures up to it.

The trial court found from all the testimony that appellant had failed to meet the burden of proof imposed

upon him, and we are clearly of the view that the court was correct in so finding.

Accordingly, the decree is in all things affirmed.