LINDELL MARSHALL *v.* I. E. McCRAY ET AL

5-3930                                                406 S. W. 2d 863

Opinion delivered October 17, 1966

*J. B. Milham,* for appellant.

*Ben M. McCray* and *Fred E. Briner,* for appellees.

CARLETON HARRIS, Chief Justice. Exie Marshall and Mary Jane Marshall were the owners of certain real estate in Saline County, Arkansas, upon which a building was located, the structure being used both for the operation of a cafe, and for a home. The property was mortgaged for the purpose of making repairs; the mortgagee, Ann Ehrlich, subsequently foreclosed the mortgage, ob-

taining a judgment of $13,137.10, and the property was ordered sold. I. E. McCray purchased same at the sale for the sum of $7,001.00. McCray then entered into an agreement with appellant Lindell Marshall, daughter of Exie and Mary Jane, wherein appellant would purchase the property. The facts thereafter are very much in dispute. Appellant contends that the agreed purchase price was the amount paid by McCray, *i. e.*, $7,001.00 plus interest, and this amount was to be repaid at the rate of $100.00 per month. This contention is supported by her father and mother. They endeavored to testify that appellee had agreed to sell the property back to their daughter for the amount he paid at the sale, except for interest, but the court would not consider this testimony.[1] Appellant also endeavored to testify that she never made any agreement to pay appellee more than $7,001.00, but the court would not permit this testimony.[2]

McCray testified that, after he bought the property, he entered into a contract with appellant to sell it to her for the sum of $10,500.00. A written instrument (contract) for the sale was offered by McCray, showing the purchase price to be $10,500.00, same to be paid monthly at the rate of $100.00 per month, and bearing interest at 7%. Appellant was also to pay taxes and insurance. This contract was signed by appellee, but not by appellant, who testified that she did not sign it because it was not the amount agreed upon; in the meantime, she had been given possession of the property. The testimony is also in complete conflict as to the payment of taxes and insurance, appellant contending that she has paid the taxes and insurance, and appellee asserting that he has

[1]The Marshalls operated a cafe, and McCray had a "juke box" and marble machines therein; the testimony on the part of Exie Marshall was to the effect that he asked McCray to buy the property and sell it to Lindell, in order that the amount of the payments, which had been about $200.00 per month, might be lowered to a figure that the daughter or Marshall could afford to pay. He stated that he was helping and assisting his daughter to buy the property.

[2]From the record: "MR. MILHAM: Did you ever agree to pay Mr. McCray more than $7,001.00 for the property? MR. BRINER: To which we object your honor. COURT: Objections sustained."

made these payments. Admittedly, appellant has paid several thousand dollars on the indebtedness. At the conclusion of the evidence, the court held that I. E. McCray (and wife) were the owners of the property and entitled to possession, and further found that all sums paid by appellant were to be considered as reasonable rent for the use of the property. From the decree so entered, appellant brings this appeal.

Both sides agree that an oral contract was made. It is quite clear that the court was of the opinion that the oral contract was in violation of the Statute of Frauds, and his findings were predicated on that premise.[3] This holding was erroneous, for we have many times held that part performance takes an oral contract for the sale of land out of the Statute of Frauds. See *Harper* v. *Albright*, 228 Ark. 760, 310 S. W. 2d 475, and cases cited therein. As previously stated, though no written contract was entered into, Lindell Marshall went into immediate possession, and thereafter made numerous payments to McCray.

The question therefore, is simply, ''What were the terms of the contract?'' The court refused to consider the testimony offered by appellant and her witnesses as to the terms of the agreement, and this constituted reversible error. Nor was the question of the payment of taxes and insurance decided by the court, since it held that there was no contract and all payments were to be considered as rent for the use of the property.

---

[3]The court, several times, rendered rulings in support of this view. From the record: "MR. BRINER: Your Honor, I am going to object again. THE COURT: Objections will be sustained. MR. MILHAM: Does the Court mean you are not going to let me go ahead and show the conversation between Mr. McCray and this party here * * * ? THE COURT: I am not, Mr. Milham. For one reason, it violates the Statute of Frauds." Later "THE COURT: Just a minute gentlemen. As it stands here now there is no contract before this court. Mr. Marshall, or the defendant has not signed any contract. Under the Statute of Frauds it is very clear that the sale of land in a contract has to be in writing. * * * THE COURT: I have sustained the objections to any oral testimony of the contract for the same reason it violates the Statute of Frauds."

In her brief, appellant mentions that she could not be charged more than 6% interest, since the contract was oral, and an interest rate exceeding 6% cannot be enforced unless such agreement is in writing. That contention is correct. See *Temple* v. *Hamilton,* 178 Ark. 355, 11 S. W. 2d 465, and authorities cited therein. This matter, of course, is not before us at the present time, since the court did not find that a contract was entered into, and consequently made no finding as to the terms of the contract, or the amount of indebtedness due. The point, of course, may well arise on remand.

In accordance with what has been said, the decree is reversed, and the cause is remanded to the Saline Chancery Court with directions to determine the provisions of the oral contract, the amount due thereunder, and to proceed as in matters of foreclosure.

It is so ordered.