WILLIAM F. HOGUE & BEDA SUE HOGUE, HUSBAND & WIFE *v.* AMA HOGUE

5-5019                              448 S. W. 2d 627

Opinion delivered December 22, 1969

[Rehearing denied January 26, 1970]

*Joe Hardegree,* for appellants.

*Shaw & Shaw,* for appellee.

FRANK HOLT, Justice. This litigation results primarily from a disagreement as to the amount of the purchase price and the payments made upon certain lands. The appellee, mother of appellant Wm. F. Hogue, brought an action against him and his wife alleging a constructive trust and seeking reconveyance of 144 acres or, in the alternative, to recover $14,400 as the fair value of the lands which she had previously conveyed to the appellants; $500 annual rent for a period of ten years less $2,000 credit [appellee later abandoned her claim

for rent;] $922.21 for her investment in a tractor; and an accounting from the appellants with respect to her cattle which she later testified to be of the value of approximately $1,800. The issues were joined by the appellants' answer denying appellee's allegations and specifically pleading the defenses of the statutes of frauds and limitations and asserting that the appellants had owned the lands in question since 1957. At the conclusion of the trial the chancellor approved the motions of both parties that the pleadings be amended to conform to the proof as is permitted by Ark. Stat. Ann. § 27-1160 (Repl. 1962).

The chancellor decreed that the property was subject to a constructive trust in favor of the appellee in the sum of $8,626.92; that the appellee had the right to use and occupy the dwelling on the property for her lifetime jointly with the appellants and that if the joint use and occupancy of the dwelling should become unbearable to the appellee and appellants, then the right of the appellants must yield to the right of the appellee; that the appellee should have the right to keep her livestock on the property; that because of offsetting equities between the parties the appellee should not recover anything for the alleged sale of her cattle or her equity in a tractor; that the parties had numerous transactions between themselves by deeds, mortgages and other business ventures, mostly for the benefit of the appellants; that all the deeds and other transactions between the parties were inferior, ineffective, and if effective, merged into the deed dated June 6, 1966, wherein appellee conveyed the lands therein described [144 acres] to the appellants; that the consideration for said conveyance was for the amount the appellee had in her property which is the sum of $8,626.92 and this consideration is unpaid. From that decree comes this appeal.

For reversal appellants contend that the finding of the court that a constructive trust existed is not supported by the required "extraordinary burden of proof"

and that no constructive trust existed without fraud at the inception. Upon a review de novo we are of the opinion that the better view is that a vendor's lien for the unpaid purchase price, instead of a constructive trust, existed in favor of the appellee.

The appellee is 69 years of age and without any formal education. Her son, the appellant, is 44 years of age with a college education. She has four other adult children. The appellee and her husband acquired 160 acres of land in 1939. When she and her husband divorced in 1944, she acquired title to this property. At about this same time she purchased an adjoining 40 acres in the name of her son, the appellant, from an allotment made to her by him while he was in the military service. In 1957, at a time when appellants were elsewhere teaching school or in the poultry business, appellee deeded 120 acres of her property to appellants in fee simple. She retained 40 acres, which was in the soil bank, "as security." In 1958 the 120 acres were reconveyed to appellee for the purpose of securing a $5,000 FHA loan in appellee's name. This money was used to construct a new house on the property. In 1963 the appellee deeded to appellants her entire 160 acres. In the meantime appellants had conveyed to appellee, without her knowledge and for their own purposes, their original 40 acres. Appellee also conveyed this acreage along with the 160 acres. The appellants, who had possession of their 1963 deed, did not record it. In 1966 the appellee made another warranty deed (a correction deed she claims) to the appellants to the same property excluding, however, a 12-acre tract which appellee, unknown to the appellants, had deeded to one of her other children. Upon receipt of the 1966 deed the appellants recorded it. Shortly thereafter they recorded the 1963 deed which included the 12-acre tract. All of the deeds were warranty deeds reciting a nominal cash consideration and no encumbrances. In March 1968 the appellee filed her complaint alleging, among other things previously indicated, an unpaid purchase price of $14,400.

It appears undisputed that the appellee agreed to convey certain lands to the appellants. According to her evidence she agreed that the consideration would be for what "I've got in it" providing she would have a home there for as long as she lived. She testified that the appellants agreed to pay her $6,333 which, according to her computations, represented what she had in the property before the new house was built. In 1958, when the property was reconveyed to her, she borrowed $5,000 in her name for the construction of a new home according to her own plans and specifications. When the house was constructed the appellants were "supposed to pay" to her "what she paid into the house." Further, it was the understanding that appellants were to pay her in full before they recorded their deed and that they breached their agreement by recording the deeds in 1966 before paying her the agreed purchase price. She testified and offered some receipts from the FHA that she had made payments in her name on the FHA loan to the extent of $2,293.92. She claims her 1966 deed to appellants was a correction deed for the purpose of excluding 12 acres that were included by mistake in the 1963 deed. It was understood by appellants, according to appellee's evidence, that this 12 acres plus 4 acres, or a total of 16 acres, were to be deeded by appellee to another one of her children.

Appellee testified that appellants never "paid another penny" after they made a $500 down payment by check in April 1957. She contends they are due no credit for this $500 down payment because it was used by her, with appellants' consent, to apply on an FHA mortgage on a tractor which appellants later acquired. She also admits that later she received $1,500 cash from the appellants. However, she testified this was used for expenses in the operation of the farm for appellants' benefit. She testified that she first learned in 1966 that appellants were not going to perform their agreement when "he told me that I had to move several times * * * he would just say you know you cannot stay here

and you know you can't." They further breached their agreement by refusing to "settle" with her and by filing her deeds before full payment of the agreed purchase price.

The appellants' version is that the sale price agreed upon was $2,500 for the 160 acres. It is undisputed that they made a $500 down payment preceding appellee's deeding to them the 120 acres in 1957. Forty acres were not conveyed to them with the understanding that it would stay in appellee's name "as security" and that the soil bank payments derived therefrom would be applied to the purchase price "until she was satisfied she had received full payment." Appellants testified that in 1963 the appellee deeded the entire farm to them because she was satisfied they had paid all they owed her and that she never mentioned the figure of $6,333. Further, that they never agreed appellee could have a home with them for the rest of her life. It was appellants' position that they had never refused appellee a place to live and it was their obligation to see that she had a place to live but that this was not a part of the consideration.

It appears undisputed that there was no disagreement between the parties from the date of the original transaction in 1957 until the appellants moved onto the farm with appellee in 1966. Then family discord erupted which was further precipitated by appellee's 1966 correction deed to appellants that excluded 12 acres from the unrecorded 1963 conveyance. It seems appellants did not object to a previous transfer of 4 acres by appellee to her daughter, the one to whom she also deeded the 12 acres.

We cannot say there is a lack of clear and convincing evidence to support the chancellor's findings except as to the $500 down payment and the $1,500 payment made by the appellants and admittedly received by the appellee. In our view the appellants are entitled to de-

this $2,000 from the $8,626.92 which the chancellor found as the unpaid purchase price. This, of course, would leave a balance of $6,626.92. There are other credits and claims made by both parties. It would serve no useful purpose to detail them since the chancellor's findings on these issues are not deemed to be against the preponderance of the evidence.

It is well established that the relation of a vendor and purchaser is essentially that of a mortgagor and mortgagee and entitles the vendor to an equitable lien upon the failure of the vendee to pay the true purchase price. *Brooks* v. *Smith,* 215 Ark. 421, 220 S. W. 2d 801 (1949); Jones, Arkansas Titles, § 76, p. 60 (1935), and the Annotated Supplement, § 103, p. 53 (1959). In the case at bar we hold that the appellee has an equitable lien to the extent of $6,626.92 upon the property conveyed to appellants by her 1966 deed.

We cannot agree with appellants' plea that the statute of frauds and statute of limitations apply in the case at bar. The true consideration in a deed is always subject to being shown by parol evidence. *Wood* v. *Swift,* 244 Ark. 929, 428 S. W. 2d 77 (1968). As to the statute of frauds, in 48 Am. Jur., Statute of Frauds, § 552, p. 857, we find: "Where an oral contract for the sale of land has been executed by a conveyance of the land to the vendee in the contract, the mischief at which the statute of frauds is aimed no longer exists, and the remaining stipulations of the contract become enforceable. Where such an oral contract is consummated by the execution of a deed and its acceptance by the vendee or title has otherwise passed in execution of the contract, the vendor may, as a general rule, recover in an action upon the contract the purchase price orally agreed to be paid, * * * ." See, also, *Ferguson* v. *The C. H. Triplett Co.,* 199 Ark. 546, 134 S. W. 2d 538 (1939) and *Lindell Marshall* v. *I. I. McCray, et al,* 241 Ark. 184, 406 S. W. 2d 863 (1966).

In the case at bar the appellants' title, of course, is dependent upon payment of the balance of the purchase price. In such a situation appellants cannot claim the debt is barred and at the same time assert title. We have said that the statute of limitations is not applicable against a vendor and in favor of a vendee in possession until there is an open assertion of the title which is made known to the vendor by the vendee. Jones, Anno. Supp., Arkansas Titles, § 86, p. 32; *Evans* v. *Jeffries,* 210 Ark. 807, 198 S. W. 2d 62 (1946). In the case at bar there was evidence that no open assertion of title, based upon payment of the full purchase price, was made until 1966 when appellants recorded appellee's deed which, according to appellee, was in violation of their agreement.

Appellants contend that the trial court erred in refusing to order an amendment of the pleadings. We find no merit in this contention inasmuch as both parties moved that the pleadings be amended to conform to the proof at the conclusion of the hearing and the court granted both motions.

In the instant case, as we first indicated, there is involved primarily the amount of the purchase price and the credits and payments upon an undisputed agreement to sell the lands. It is essentially an issue of credibility involving the interested parties. In such a situation we are largely guided by the chancellor's decision. *Hickenbottom* v. *Masterson,* 240 Ark. 418, 399 S. W. 2d 662 (1966).

The decree is modified only to the extent that a vendor's lien exists for $6,626.92 in appellee's favor on the lands she conveyed in 1966 to the appellants who now have the right to discharge this lien by payment of this balance, otherwise the right of foreclosure exists.

The decree is remanded with directions to enter a decree consistent with this opinion.

JONES, J., not participating.