# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-4115WA

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | On Appeal from the United |
| v. | * | States District Court |
| | * | for the Western District |
| | * | of Arkansas. |
| Applied Pharmacy Consultants, Inc., | * | |
| and Charles Shuster, | * | |
| | * | |
| Appellants. | * | |

_____

Submitted: March 10, 1999

Filed: July 9, 1999

_____

Before RICHARD S. ARNOLD, FLOYD R. GIBSON, and HANSEN, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.


The United States brought this action against Applied Pharmacy Consultants, Inc., and Charles Shuster, its principal officer and shareholder, to recover Medicare payments that were claimed to be in excess of the value of medical devices actually furnished by Applied. The theory of the case was that the United States was billed and paid for one sort of device, whereas in fact, another, less valuable, device was furnished. The District Court found the facts in favor of the United States and awarded

judgment in the amount of about $242,000, the amount by which, according to the Court, payment to the United States exceeded the value of what the Medicare patients in fact got. The award was made on a theory of unjust enrichment. Applied and Shuster appeal. Their main argument is that there was an express contract between Applied and the United States, and that, therefore, recovery on the theory of unjust enrichment is barred as a matter of law. Under the circumstances of this case, we disagree with that submission, and we therefore affirm the judgment of the District Court.[1]

I.

The United States sued Applied and Shuster – Applied's president and sole shareholder – over payments made under Medicare Part B, Supplementary Medical Insurance Benefits For Aged and Disabled, 42 U.S.C. §§ 1395-95ccc. Applied, a qualified Medicare provider, provided durable medical goods to Medicare beneficiaries and billed Medicare for the goods. Medicare would then pay Applied 80 per cent. of the "reasonable charge" for the goods. See 42 U.S.C. §§ 1395m(a)(1)(A), 1395x(m)(5), 1395cc(a).

Applied provided ostomy products to Medicare beneficiaries. The products at issue in this case were devices that would attach to a patient's body, collecting and protecting the patient's skin from bodily excretions, after surgery had created an artificial permanent opening through the skin for the elimination of bodily waste. The billing codes for ostomy products fell into two essential categories: skin-barrier products and face-plate products. Face-plate products have a higher allowable value than do skin-barrier products. The United States alleged that Applied provided the less expensive, skin-barrier products to beneficiaries and billed Medicare using the billing

_____

[1]The Hon. H. Franklin Waters, United States District Judge for the Western District of Arkansas.

codes for the more expensive, face-plate products. The government, though its Medicare carrier in Arkansas, Blue Cross Blue Shield, paid the bills. When it discovered that beneficiaries had been provided less expensive products, the United States brought this suit for violation of the Civil False Claims Act, 31 U.S.C. §§ 3729-33, breach of contract, payment by mistake of fact, and unjust enrichment.

Before trial, the government voluntarily dismissed its claims for breach of contract and payment by mistake of fact. Evidence was presented on the other claims at a jury trial, with the understanding that the jury would decide the False Claims Act claim, and, if necessary, the Court would decide whether the United States could recover for unjust enrichment. After trial, the jury found for defendants on the False Claims Act, answering "no" to an interrogatory that asked if defendants "knowingly submitted a false claim for payment." Appellant's App. 24. The unjust-enrichment issue was thereupon submitted to the Court. Defendants argued that a contract existed between Applied and the United States, precluding relief, as a matter of law, under a theory of unjust enrichment. They also argued, as a matter of fact, that the proof would not support any award. The District Court found that a contract existed, under which Applied would provide durable medical equipment to Medicare beneficiaries, and Medicare would reimburse Applied for the products it supplied. The Court then found that "the evidence was overwhelming that Applied, acting through Mr. Shuster, supplied less expensive items and knowingly and intentionally billed for items for which reimbursement was three times as much." Appellant's App. 61. The Court awarded $242,622 to the United States for unjust enrichment, the award being based on the difference between what the government ought to have paid Applied for the goods provided to the beneficiaries, and what it in fact had paid.

II.

On appeal, Applied and Shuster argue that the existence of a contract is a legal bar to recovery under a theory of unjust enrichment.

-3-

We begin by discussing the question of the governing law. Both parties have analyzed the issues as if Arkansas law were controlling. In our view, federal law governs the interpretation and consequences of a contract between the United States and another party, as well as the determination of the rights of the United States under a nationwide program. See United States v. Kimbell Foods, Inc., 440 U.S. 715, 726 (1979) (nationwide programs); Donham v. United States, 536 F.2d 765, 769 (8th Cir. 1976) (contract disputes), aff'd sub nom, Stencil Aero Engineering Corp. v. United States, 431 U.S. 666 (1977). There is no federal statute on the subject, however, and no reason to suppose that the common law of Arkansas would, in the present context, be in any way inconsistent with federal interests. We therefore believe that federal law should properly look to the common law of Arkansas for a rule of decision, especially since the present case is governed by general principles of fairness and not by any rule that appears peculiar to the law of any state. See Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 97-98 (1991) (courts should incorporate state law into federal common law as rule of decision, unless its application would frustrate objectives of a federal program).

Applied relies on the general rule that an action for unjust enrichment will not lie where there is an express contract between the parties. We readily acknowledge that there is such a rule. "Normally, when an express contract exists between the parties, unjust enrichment is not available as a means of recovery." Klein v. Arkoma Prod. Co., 73 F.3d 779, 785-86 (8th Cir.), cert. denied, 519 U.S. 816 (1996) (applying Arkansas law). The reason is obvious: a party who can claim the benefit of an express agreement has no need of an unjust-enrichment theory. At common law, if you had a contract and believed it had been broken, you simply sued for breach of contract, or, to use the old terminology, you brought an action of special assumpsit. But if there was no express contract, but rather simply a claim for money had and received, or goods sold and delivered, under which you were attempting to recover the fair market value of goods or services conferred on the defendant, you would bring an action of general assumpsit, also known as indebitatus assumpsit. This last phrase means simply, "being

-4-

indebted [to the plaintiff, the defendant] has agreed" to pay the debt. Both the debt and the agreement were fictional, in the sense that there was never a debt, properly so called, nor an express promise to pay it, but simply circumstances from which the law implied a financial obligation. If I have money that in justice belongs to you, you should recover it, notwithstanding the absence of an express promise on my part to pay you. So, if an express agreement exists between the parties, no need for a general action for money had and received could exist. The agreement itself would be the basis for the action, and complete justice would be done.

To the general rule, as is commonly the case, there were many exceptions. Some of these are set out in Friends of Children, Inc. v. Marcus, 46 Ark. App. 57, 61-62, 876 S.W.2d 603, 605-06 (1994). There, the Arkansas Court of Appeals set out the law as follows:

> Appellant also contends that "the doctrine of unjust enrichment does not apply when there is a valid, legal, and binding contract," citing, inter alia, Lowell Perkins Agency v. Jacobs, 250 Ark. 952, 469 S.W.2d 89 (1971). In Jacobs, the plaintiff bought a low-mileage used car from an automobile dealer, signing a contract and a promissory note to finance it. The next day the plaintiff learned she would have to pay sales tax of $86.00 on the car. She returned the car and declined to make the payments on the note because she felt that the salesman should have told her she had to pay the sales tax.
>
> In reversing the trial judge's award of restitution the supreme court stated, "There can be no 'unjust enrichment' in contract cases." It is clear, however, that the court recognized its statement merely as a general rule: "It is generally held that where there is an express contract the law will not imply a quasi or constructive contract." Jacobs, 250 Ark. at 959, 469 S.W.2d 89 (quoting 17 C.J.S.

Contracts § 6 at 574). The mere fact that there is a contract between the parties does not prevent the grant of restitution in an appropriate case. Appropriate cases include those in which there has been a rescission at law, see e.g., Maumelle Co. v. Eskola, 315 Ark. 25, 865 S.W.2d 272 (1993); where a contract has been discharged by impossibility or frustration of purpose, 1 George E. Palmer, The Law of Restitution § 1.7 at 42 (1978); or where the parties to a contract find they have made some fundamental mistake about something important in their contract. Dobbs, supra, § 4.3 at 256.

In Frigillana v. Frigillana, 266 Ark. 296, 584 S.W.2d 30 (1979), the court said that in unjust enrichment cases "the simple, but comprehensive, question is whether the circumstances are such that equitably defendant should restore to plaintiff what he has received[,]" (quoting 77 C.J.S. Restitution 322). The Restatement of Restitution § 1 states simply, "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." An action based on unjust enrichment is maintainable in all cases where one person has received money under such circumstances that, in equity and good conscience, he ought not to retain it. Frigillana, supra at 307. The remedy is neither given nor withheld automatically, but is awarded as a matter of judgment. See Dobbs, supra, § 4.3 at 256; Frigillana, 266 Ark. at 306.

In the Jacobs case the contract was executory and the plaintiff had no reasonable basis to rescind. Any "enrichment" of the automobile dealer was therefore not unjust. In the case at bar the parties effectively rescinded the transaction by agreement, and the appellees had fair reason for their dissatisfaction. Under the facts of the case at bar the award of restitution in equity was at least discretionary. We find no abuse of discretion.

Notice the use of the word "include" in this passage. The instances in which the general rule does not apply were not intended by the Arkansas Court of Appeals to be an exhaustive list, but merely illustrative. There could be other such instances, depending on the nature of the case. In Klein, supra, for example, there was an express contract between the parties, in the form of a lease, but an action for unjust enrichment was nevertheless allowed because the lease did not fully address the issue raised in the case. A good example of a case in which the rule did bar an action for unjust enrichment is Lowell Perkins Agency, Inc. v. Jacobs, 250 Ark. 952, 958-59, 469 S.W.2d 89, 92 (1971). There, the plaintiff bought a car from the defendant. The plaintiff then realized that she would have to pay a sales tax on the car. She wanted to undo the deal, and to recover back from the seller the consideration she had given. No one had told her that she would not have to pay the sales tax, but she believed, nonetheless, that she was being unjustly imposed upon. She argued that the seller had been unjustly enriched. The Supreme Court of Arkansas rejected this argument. The Court explained that there was a contract for the sale of the car between the parties, and that the seller had never promised the buyer that she would not have to pay the sales tax. To allow her to recover in unjust enrichment (even assuming that there had been some injustice on the part of the seller), accordingly, would be inconsistent with the parties' contract and would not therefore be allowed.

Similarly, in Moeller v. Theis Realty, Inc., 13 Ark. App. 266, 268-69, 683 S.W.2d 239, 240 (1985), there was a written contract for listing of real estate. The broker sued for his commission. The client, the defendant in the case, offered a defense of unjust enrichment. The broker, it was argued, had done nothing to earn the commission. The Court saw no injustice. Under the terms of the written contract, the broker was obliged to list the property for sale. If the property was sold during the listing period, the broker was entitled to a commission, regardless of the circumstances of the sale. The written contract was held to prevail over any theory of unjust enrichment offered by way of defense to the action. Perhaps the efforts of the broker did not produce the sale, but the sale did take place pursuant to an option granted

during the listing period, and, therefore, the terms of the written contract were satisfied. To allow a theory of unjust enrichment in these circumstances would be contrary to law.

Finally, we describe briefly the earliest case cited by defendants, Jackson v. Jones, 22 Ark. 158 (1860). Defendants cite the following statement from the case: "The law never accommodates a party with an implied contract when he has made a specific one as to the same subject matter." Id. at 162. This general statement, when taken out of context, supports the defendant's position in the present case. But when the facts of Jackson v. Jones are examined, as is so often the case, the statement appears in a different light. In Jackson, there was an agreement between the parties under which Jones agreed to sell to Jackson 1,500 bushels of corn at forty cents a bushel. As events unfolded – the details are not important for present purposes – Jackson got 1,179 bushels of the corn, and did not pay for them. Jones then sued Jackson upon "an implied assumpsit," as the Supreme Court of Arkansas put it, id. at 159, claiming that he should have judgment for the fair market value of the corn. The jury returned a verdict for the plaintiff, and fixed the fair market value at seventy-five cents a bushel. The original contract between the parties, however, had been subject to a certain condition, and the jury was never asked to determine if the condition had occurred. The Supreme Court reversed the judgment. If the condition had not occurred, the Court said, it would be entirely proper for the plaintiff to receive the fair market value of his corn in an action for goods sold and delivered, what we would now call an action for unjust enrichment. If, however, the condition of the contract had occurred, the plaintiff would be limited to the terms of the contract, under which he could recover only forty cents a bushel, whatever the fair market value of the corn at the time that it was taken by the defendant might have been. The case nicely illustrates the reason for the general rule: No one should recover, under a general theory of unjust enrichment, more than he would be entitled to under an express agreement between the parties. Simply put, it is not unjust for one party to have or retain what the other party has agreed to.

Speaking of the general rule that unjust enrichment will not lie where there is an express contract between the parties, the Supreme Court said:

> This rule, however, so far as it relates to the form of the remedy, must be understood as subject to certain qualifications. Thus: if the agreement has been completely performed by the one party, and there is nothing special in the contract in relation to the time or manner of the payment, or the credit, if any, has expired, there is then a duty upon the other party to pay the stipulated price, for which a general indebitatus assumpsit [action for unjust enrichment] will lie . . .. Or, if the plaintiff is entitled to recover, but cannot sue on the special contract, for the reason that he cannot aver and prove a full compliance with its terms, he will be permitted to recover on the common counts, in assumpsit . . ..

22 Ark. at 162-63 (citation omitted).

What does all this mean for the present case? Here, for whatever reason, the United States decided to drop its action for breach of the express contract. The wording of the contract was in fact rather general, and perhaps the government felt that it was not specific enough to cover the particular claim pressed here. In any case, the contract action was abandoned. At the same time, however, the government announced its intention to pursue Applied on a theory of unjust enrichment, and it was agreed by the parties that the Court, not the jury, would decide this branch of the case. The parties, in effect, waived their right to jury trial on this theory. On the basis of the facts in the record, the District Court then found that Applied had in fact been unjustly enriched at the expense of the plaintiff, because Applied had received for certain goods some $242,000 more than they were worth. The remedy decreed by the Court, a money judgment in the amount of this excess, is exactly the same remedy as would

have been recovered in an action for breach of the express contract. There is no inconsistency whatsoever, in terms of substance, between the plaintiff's recovery on a theory of unjust enrichment and what it would have recovered had the contract theory been pursued.

We must remember that the rules of the common law, especially rules which concern forms of pleading, should never be taken beyond the reason which gave them birth. The reason for the rule that someone with an express contract is not allowed to proceed on an unjust-enrichment theory, is that such a person has no need of such a proceeding, and, moreover, that such a person should not be allowed by means of such a proceeding to recover anything more or different from what the contract provides for. Here, that reason does not apply, and therefore the rule should not apply. Cessante ratione, cessat ipsa lex. When the reason for the rule ceases, the rule itself ceases to apply. No injustice whatsoever is done to Applied by this result. Indeed, it would be a gross injustice to the United States to apply woodenly the technical rule on which Applied relies on this appeal.

There is also, of course, the question of fact. Did the District Court clearly err (for that is the standard of review) in finding that the goods delivered were not in fact what Applied billed for, and that the difference between the two was $242,000? We have considered Applied's factual argument, and we hold that the District Court's findings are not clearly erroneous. Appellants also contest the judgment against Shuster, the individual officer and shareholder of Applied. This point was not raised in this Court until the filing of the appellants' reply brief. We therefore need not address it.

The judgment against Applied and Shuster, jointly and severally, in the amount of $242,622, is

Affirmed.

-10-

A true copy.

Attest:

       CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.