# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2109
_____

Coleman Consulting, LLC

*Plaintiff - Appellant*

v.

Domtar Corporation; Domtar A.W. LLC

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Arkansas - Texarkana

_____

Submitted: January 11, 2024
Filed: September 5, 2024

_____

Before LOKEN, KELLY, and STRAS, Circuit Judges.

_____

LOKEN, Circuit Judge.

Farnsworth Coleman ("Coleman"), a citizen of Georgia and the sole member of Coleman Consulting, LLC ("CC"), traveled to a pulp mill in Ashdown, Arkansas ("the Ashdown Mill") owned and operated by Domtar A.W. LLC ("Domtar A.W."), a subsidiary of Domtar Corporation, entities that are citizens of Delaware and South Carolina. In November 2016, CC and Domtar A.W. entered into a one page written Confidentiality Agreement, drafted by Coleman and signed by Coleman and John

Borowitz, the Ashdown Mill Superintendent, in which CC agreed to "consult for Domtar Ashdown mill" regarding the operation of the mill's "Chemi-Washer," the brand name of a washer that rinses chemicals from softwood chips that have been converted into pulp used to produce pulp and paper products.

Coleman visited the Ashdown Mill on four occasions and prepared and sent a list of recommendations to Borowitz. CC submitted invoices totaling $30,929.40 to Domtar A.W. for expenses and services at the agreed $250.00 hourly rate, which Domtar paid in full in December 2016. On May 22, 2017, Borowitz emailed Coleman that his consulting services were no longer needed.

On August 29, 2018, CC commenced this diversity action against Domtar A.W. and its parent company, asserting a damage claim for breach of contract and, in the alternative, a claim for unjust enrichment. CC alleges that, after signing the Confidentiality Agreement, Coleman and Borowitz orally agreed that CC would be further compensated with thirty percent of the increased profits Domtar A.W. realized from using CC's recommendations during the ten-year term of the orally modified contract. (The written agreement contains no duration term.) Among other defenses, Domtar A.W. denies there is an oral agreement to compensate CC beyond the invoices Domtar A.W. paid in 2016.

After more than three years of discovery and contentious motion practice, the district court[1] granted Domtar A.W.'s motion for summary judgment, concluding that the Arkansas statute of frauds bars CC's breach of contract claim and that CC failed to prove its unjust enrichment claim. The court denied CC's motion for reconsideration based in part on alleged newly discovered evidence supporting its unjust enrichment claim. See Fed. R. Civ. P. 60(b)(2). CC appeals these rulings.

---

[1]The Honorable Susan O. Hickey, Chief Judge of the United States District Court for the Western District of Arkansas.

Reviewing the grant of summary judgment *de novo* and the denial of a motion for reconsideration for abuse of discretion, we affirm. See Dowden v. Cornerstone Nat'l Ins. Co., 11 F.4th 866, 872 (8th Cir. 2021); Miller v. Baker Implement Co., 439 F.3d 407, 414 (8th Cir. 2006) (standard of review).

## I. The Breach of Contract Claim

The written Confidentiality Agreement drafted by Coleman provides that "all recommendations and confidential information including procedures and recommendations are not to be shared with other Domtar mills, not within the Pulp and Paper Industry nor any companies that do business in the Pulp and Paper Industry." It also provides for CC's compensation for its consulting:

> Coleman Consulting will be compensated to include expenses and hourly rate ($250.00/hr) along with (Retainer fee, based on a percentage of NPS (net profit savings). Such fee will be verified and agreed upon based on Customers Savings, and increased production.

CC's breach of contract claim is not based on this incomplete provision, which leaves the determination of a "Retainer fee" for future agreement. Rather, CC bases its damage claim on an alleged oral modification of the written Confidentiality Agreement. As described by Coleman in a March 2022 Affidavit, after CC evaluated the Ashdown Mill and provided Domtar A.W. a list of improvement items, "Mr. Borowitz and I agreed that my percentage of compensation would be 30% [of Domtar A.W.'s net profit savings] . . . for as long as Domtar continued to use the [improvement] items, but not to exceed 10 years."

John Borowitz denies agreeing to this oral modification. Domtar A.W. argues that Borowitz had no authority to bind it to this alleged oral contract and further contends that Coleman's recommended improvements were largely consistent with

recommendations received from other consulting services, and that most of CC's recommendations were not implemented or already in place before Coleman visited the Ashdown Mill. The district court did not reach these fact-intensive issues. Rather, accepting as true for summary judgment purposes the terms of the oral contract alleged by CC, the court held that the oral agreement is barred by the Arkansas statute of frauds, Ark. Stat. § 4-59-101(a)(6), which provides:

> Unless the agreement, promise, or contract, or some memorandum or note thereof, upon which an action is brought is made in writing and signed by the party to be charged therewith, or signed by some other person properly authorized by the person sought to be charged, no action shall be brought to charge any . . . . (6) Person upon a contract, promise or agreement that is not to be performed within one (1) year from the making of the contract, promise, or agreement.

The court concluded the oral modification contained essential terms of the alleged agreement and could not be performed in one year. Therefore, "the written Agreement does not satisfy the Statute of Frauds and is unenforceable." No party contests the court's decision to apply Arkansas substantive law. On appeal, CC argues the district court erred in concluding that the oral contract could not be performed in one year, and that well-established Arkansas statute of fraud exceptions for partial performance and detrimental reliance apply.

**A.** Performed Within One Year. The relevant subsection of the Arkansas statute of frauds provides that it applies to "a contract, promise or agreement that is not to be performed within one (1) year." As the district court noted, it is well established that the statute of frauds "only applies to contracts that are *incapable* of performance within a year." As the Supreme Court of Arkansas stated this rule in Township Builders, Inc. v. Kraus Construction Co., 696 S.W.2d 308, 310 (Ark. 1985), the statute of frauds only invalidates those oral contracts which "in the light

of all the circumstances which enter into their construction, do not admit of performance . . . within a year from the time they were made."

The district court concluded that the orally modified agreement alleged by CC was subject to the statute of frauds because "the Agreement contains no deadline for [Domtar A.W.] to decide whether to implement Coleman's recommendations. If [Domtar A.W.] decide[s] to implement the recommendations at any time during the ten-year term, they are required to pay [CC] 30% of the net profit savings resulting from the implementation of the recommendations." The court noted Coleman's deposition testimony that he planned to staff the Ashdown Mill to "ensure compliance with the operating strategy" for the "duration of the contract."

CC argues the district court misconstrued the alleged oral agreement because, the ten-year term notwithstanding, the agreement provided that CC could make recommendations and Domtar A.W. could implement those recommendations for a few months, discontinue them, and pay CC in accordance with the oral modification. In that scenario, the orally modified contract would have been fully performed in less than one year. Therefore, the statute of frauds does not apply. CC points to Coleman's litigation Affidavit in which he asserts that he and Borowitz agreed that CC "would receive payment for Domtar's use of the chemi-washer consulting items for as long as Domtar continued to use the items, but not to exceed 10 years. If . . . used by Domtar for less than a year, then my payment would be less than a year."[2]

---

[2]The Supreme Court of Arkansas has repeatedly held that the evidence needed to establish the execution of a valid oral contract must be "clear, cogent, satisfactory and convincing." Stuart v. Beam, 224 S.W.2d 7, 8 (Ark. 1949). In Dolphin v. Wilson, 942 S.W.2d 815, 819-20 (Ark. 1997), the Court found that the trial court had clearly erred when it concluded that the party's own testimony along with routine maintenance constituted clear and convincing evidence of an oral agreement for the sale of land.

We conclude Coleman's Affidavit is not inconsistent with the district court's analysis and conclusion. The district court reasoned that, under the terms of the agreement as alleged by CC, Domtar A.W. was required to pay CC thirty percent of the increased net profits resulting from use of CC's recommendations over a ten-year period. Therefore, even if Domtar A.W. implemented but discontinued use of the recommendations within the first year, the total amount owed under the agreement could not be finally calculated until the end of the ten-year term. Domtar A.W. had the option to implement CC's recommendations at any point during the ten-year term, so even if it implemented and discontinued use of one or more recommendations within the first year, it could resume use of CC recommendations before the end of the ten-year term, subject to its obligation to pay the agreed 30% of net profit savings to CC (which, not surprisingly, is the basis of CC's contract damage claim).

On appeal, CC points to no evidence supporting its contention that the agreement as orally modified somehow restricted Domtar A.W.'s ability to implement CC's recommendations at any time during the alleged ten-year period. Indeed, CC stated in its response to Defendants' motion for summary judgment that payment "was dependent on Domtar [A.W.]'s choice to implement and maintain Coleman's recommendations for so long as it wanted." Nor has CC cited an Arkansas appellate decision in which an alleged oral agreement with a stated term of longer than one year was found to be capable of performance in less than one year. CC cites <u>Johnson v. Harrywell, Inc.</u>, 885 S.W.2d 25 (Ark. App. 1994) and <u>Township Builders</u>, but in those cases the alleged oral agreements were indefinite as to the time for performance. <u>See</u> <u>Johnson</u>, 885 S.W.2d at 26-27; <u>Township Builders</u>, 696 S.W.2d at 310. "The general rule is that a material modification of a contract within the statute of frauds must be in writing in order to be valid and binding." <u>Reynolds v. Havens</u>, 479 S.W.2d 528, 530 (Ark. 1972).

Based on the summary judgment record, we agree with the district court there is no genuine dispute that Domtar A.W. had the right to implement CC's

recommendations at any point during the ten-year period. In addition to lacking evidentiary support, CC's position is contrary to the parties' pecuniary interests. We further note that Domtar A.W.'s obligation in the Confidentiality Agreement not to share CC's procedures and recommendations "within the Pulp and Paper Industry" would continue to apply during the full ten-year term of the orally modified contract alleged by CC. Cf. Robins v. Zwirner, 713 F. Supp.2d 367, 375 (S.D.N.Y. 2010) (confidentiality agreement subject to statute of frauds under New York law).

**B.** The Part Performance Exception. CC argues its part performance of the orally modified contract takes it out of the statute of frauds. "[A]n oral agreement can be taken out of the statute of frauds if the making of the oral contract and its performance is proven by clear and convincing evidence." Cobb v. Leyendecker, 200 S.W.3d 924, 926-27 (Ark. App. 2005). As the district court noted, "the full performance on the part of one party and the part performance of the opposing party operates to take an oral agreement out of the statute of frauds." Rovnaghi v. Ronaghi, 646 S.W.3d 163, 167 (Ark. App. 2022). CC argued it "fully performed under the Agreement, and [Defendants] partially performed by paying Coleman his travel expenses."

The district court rejected CC's performance argument. "Defendants essentially had ten years in which they could decide to implement Coleman's recommendations," and CC agreed to staff the Mill to oversee implementation:

> Plaintiff simply concludes that it has "fully performed under the Agreement" without identifying the conduct that constitutes the full performance. Under the Agreement, Plaintiff agreed to "consult for Domtar Ashdown mill" . . . . Plaintiff has made no effort to identify what it considers to be full performance of its obligation under the Agreement, and thus its argument regarding full and partial performance must fail.

"At any time before the end of the ten-year term, [Domtar A.W.] had the option of implementing the recommendations," the district court reasoned. "Thus, performance could only be completed once the ten-year term expired."

On appeal, CC argues "[t]he part performance exception to the statute of frauds only requires partial performance by one party; not full performance by one party and part performance by the other," citing cases concerning alleged oral agreements for the sale of land in which the buyer began paying the purchase price and took possession of the land. Marshall v. McCray, 406 S.W.2d 863 (Ark. 1966); Harper v. Albright, 310 S.W.2d 475 (Ark. 1958). In each case, the court explicitly limited its holding to land sale agreements. See Marshall, 406 S.W.2d at 864; Harper, 310 S.W.2d at 476. They did not address the part performance issue in this case.

Coleman Consulting further argues that, even if full performance by one party and partial performance by the other party is required, it has still satisfied that burden. There obviously has not been full performance by Defendants; that is the basis for CC's lawsuit. And we agree with the district court that CC's argument that it fully performed by proposing its improvement items after Coleman's four consulting visits -- for which CC was paid in accordance with the written Confidentiality Agreement -- cannot be considered clear and convincing evidence that CC performed its entire "consulting obligation" over the ten-year term of the orally modified contract. Moreover, proposing improvement items and procedures was part of the consulting services CC agreed to provide in the written Agreement. Performance of these obligations was not "solely referable to the oral agreement," as Arkansas law requires. Moore v. Wallace, 205 S.W.3d 824, 826 (Ark. App. 2005).

We agree with the district court that the performance exception to the Arkansas statute of frauds does not apply.

**C.** The Detrimental Reliance Exception. CC argued to the district court "that Coleman detrimentally relied on Defendants' promise to compensate [CC] with 30% of the net profit savings resulting from Coleman's recommendations when he created the list of recommendations for the Chemi-Washer and provided the list to Defendants." The district court rather summarily rejected this contention:

> Plaintiff does not point the Court to any evidence to support its argument that Plaintiff relied on Defendants' promise to pay 30% of the net profit savings when he created the recommendations or improvement items . . . [I]t appears that Plaintiff would have created and provided the recommendations to Defendants regardless of whether they implemented them and Plaintiff was paid the 30% of the net profit savings.

On appeal, CC argues in a one-page segment of its Brief that the district court erred, repeating the same argument without responding to the reasoning of the district court. The agreement gave Domtar A.W. the option to decline to implement CC's recommendations, in which case CC would still receive the expenses and services hourly rate promised in the written Confidentiality Agreement, which Domtar A.W. paid. Under the terms of the alleged oral modification, Domtar A.W. could still have declined to implement any of Coleman's recommendations, even if the orally modified contract was enforceable. Thus, we agree with the district court that CC failed to establish a question of fact as to its detrimental reliance on the oral modification. CC was obligated to perform consulting services under the written agreement. Detrimental reliance estoppel may be raised to defeat the statute of frauds only "[w]here one has acted to his detriment *solely* in reliance on an oral agreement." Country Corner Food & Drug, Inc. v. Reiss, 737 S.W.2d 672, 674 (Ark. App. 1987) (emphasis added).

For the foregoing reasons, we affirm the district court's grant of summary judgment dismissing CC's breach of contract claim. We further conclude the district

court did not abuse its discretion in denying CC's repetitive motion for reconsideration of this decision.

## II. The Unjust Enrichment Claim

CC pleaded an alternative claim for unjust enrichment. "To find unjust enrichment, a party must have received something of value, to which he or she is not entitled and which he or she must restore." El Paso Prod. Co.v. Blanchard, 269 S.W.3d 362, 372 (Ark. 2007). CC asserts this claim in the alternative because "there can be no 'unjust enrichment' in contract cases." Lowell Perkins Agency, Inc. v. Jacobs, 469 S.W.2d 89, 92 (Ark. 1971). "[T]he law never accommodates a party with an implied contract when he has made a specific one on the same subject matter." Id. at 93, quoting Jackson v. Jones, 22 Ark. 158 (1860).

The district court granted summary judgment dismissing this claim because CC "was paid the full amount of every invoice" submitted and there was no record evidence "that calculate[d] an approximation of the amount of [Domtar A.W's] alleged gain or benefit." CC argues the district court erred because the record contains evidence of Domtar's gain, pointing to testimony by an Ashdown Mill manager that certain recommendations were implemented for a time, and an expert report approximating the amount of gain from those recommendations. CC further argues the district court erred in denying reconsideration based on documents Domtar A.W. produced after it moved for summary judgment that provide further evidence of Domtar A.W's gain from Coleman's recommendations, a fact-intensive issue.

**A.** We conclude there is a more fundamental problem with this unjust enrichment claim. As the district court noted, CC provided consulting services and recommendations for which Domtar A.W. paid over $30,000. In the absence of a contractual obligation to pay more, there is nothing inherently unjust about this

-10-

situation. CC cannot use an unjust enrichment claim to enforce an unenforceable oral contract obligation.

**B.** In denying reconsideration of its decision to dismiss this claim based on CC's failure of proof, the district court noted that CC "waited until the eleventh hour," a mere three weeks before the extended deadline of a three-year discovery period, to request additional documents from Defendants and never moved to supplement its summary judgment response after Domtar A.W. produced the documents:

> Thus, the Court cannot find that Plaintiff exercised diligence to obtain the evidence before the entry of the summary judgment order. Further, the newly discovered evidence was discovered before the Court issued its summary judgment order.

Rule 60(b)(2) "provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." Callanan v. Runyun, 75 F.3d 1293, 1296-97 (8th Cir. 1996) (quotation omitted). Factors warranting the grant of Rule 60(b)(2) relief include whether the movant "exercised due diligence to discover the evidence before the end of [the summary judgment hearing]," and whether "a new [hearing] considering the evidence would probably produce a different result." Id. at 1297 (quotation omitted). On appeal, CC blames Domtar A.W. for the delay but offers no explanation for its failure to request these documents before "the eleventh hour," nor its failure to seek leave to supplement its summary judgment response based on documents received more than two months before the court issued its summary judgment opinion. The district court did not abuse its substantial discretion in denying the Rule 60(b)(2) motion for reconsideration.

CC's motion for reconsideration was based on new evidence of Domtar A.W.'s gain. As noted above, CC failed to establish the gain was unjust. Even if probative, a new hearing to consider these "new" documents would not cure this defect.

The judgment of the district court is affirmed.

_____